**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roy L. McCOY, Defendant-Appellant.**

**No. 75–1040.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1975.

Decided May 28, 1975.

Certiorari Denied Oct. 14, 1975. See 96 S.Ct. 195.

Frederick F. Cohn, William H. Wise, Chicago, Ill., for defendant-appellant.

David C. Mebane, U. S. Atty., John R. Byrnes, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and STEVENS and TONE, Circuit Judges.

STEVENS, Circuit Judge.

Appellant was convicted of passing a counterfeit $20 bill in violation of 18 U.S.C. § 472. He challenges the validity of his arrest, the admissibility of the counterfeit bills obtained in consequence thereof, and the failure of the trial judge to exercise his discretion to read a part of the trial transcript to the jury pursuant to a request by the foreman. We affirm.

The evidence disclosed that on April 20, 1974, McCoy tendered the counterfeit bill to a department store employee in payment for certain merchandise. Having been alerted to watch for counterfeit currency, the employee examined the bill and thereafter summoned the store's security guard. Appellant then accompanied the guard and the store manager to the manager's office, where appellant remained unattended for a short period of time. A Madison, Wisconsin, police officer subsequently arrived at the store and placed appellant under arrest.

Two days later, a store employee discovered eight other counterfeit $20 bills concealed under the floor stand of an ash tray in the manager's office. These bills were eventually introduced into evidence by the government at appellant's trial.

Appellant argues that the police officer who placed him under arrest was not empowered by Wisconsin law to make an arrest for the commission of a federal offense, and that his arrest was therefore unlawful. From this premise, he concludes that all nine counterfeit bills introduced into evidence were obtained incident to an illegal arrest, and should have been suppressed. Appellant also asserts that the eight bills found in the office should have been excluded for the additional reason that the government

failed to prove that they had ever been in his possession. Finally, he argues that the district judge erred in failing to exercise his discretion when considering and ruling upon a jury request, made after the commencement of deliberations, to hear the testimony of a certain witness.

### I.

Appellant's arrest by a Wisconsin peace officer might be "unlawful" for at least three different reasons: (1) it might have violated his Fourth Amendment right to be secure against an unreasonable seizure of his person; (2) it might have violated some positive prohibition set forth in the law of Wisconsin; or (3) it might have simply been unauthorized, in the sense that there is no Wisconsin statute expressly conferring authority on a state official to arrest for a federal crime. It is in this third sense that appellant argues that his arrest was "unlawful."

We may make the dubious assumption that he correctly construes the law of Wisconsin [1] without accepting the conclusion that the evidence obtained as an incident to that arrest was therefore inadmissible as a matter of federal law. The exclusionary rule fashioned in Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, applies to evidence which was obtained in an unconstitutional manner. Arguably, if the conduct of the state officer violated an express prohibition in the law of his sovereign, the evidence which he thereby obtained might also be sufficiently tainted to be inadmissible in a federal trial. *Cf.* Olmstead v. United States, 277 U.S. 438, 470 (Holmes, J., dissenting), 479–480 (Brandeis, J., dissenting). But an arrest which violates no federal or state prohibition does not offend any federal policy and therefore provides no basis for objecting to the admissibility of evidence obtained in consequence thereof. There is no reason for extending the exclusionary rule in federal trials to deter state citizens, whether officers or not, from making arrests for federal crimes of which there is clearly probable cause to believe the arrestee guilty.

### II.

The eight counterfeit bills found in the manager's office were apparently introduced to prove that defendant had not passed the first bill innocently. Defendant argues that the eight bills were not admissible unless it were first established that he had possessed them.[2] Defendant's objection, as we understand it, is one of relevance.

Relevant evidence is defined in Rule 401 of the Federal Rules of Evidence to

---

1. The assumption is dubious for at least two reasons: First, since Wisconsin law provides that "[t]he common-law rules of criminal law not in conflict with the criminal code are preserved," Wisconsin Statutes, § 939.10, it would appear that the police officer (entirely apart from any authority conferred by statute) possessed the common law authority of any other citizen to arrest a person whom he reasonably believes has committed a felony. *See* Moll v. United States, 413 F.2d 1233, 1236 (5th Cir. 1969); Plummer v. Johnson, 70 Wis. 131, 35 N.W. 334, 336–337 (1887); Bergeron v. Peyton, 106 Wis. 377, 82 N.W. 291, 293 (1900). *See also* Ward v. United States, 316 F.2d 113 (9th Cir. 1963), cert. denied, 375 U.S. 862, 84 S.Ct. 132, 11 L.Ed.2d 89; Wion v. United States, 325 F.2d 420 (10th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309; Alexander v. United States, 390 F.2d 101 (5th Cir. 1968), and United States v. Chapman, 420 F.2d 925 (5th Cir. 1969). We do not think this conclusion is undermined by the fact that the Wisconsin statutory definition of a felony does not expressly encompass a federal crime. Second, the record clearly shows that the arresting officer had knowledge of facts—namely, that McCoy had attempted to acquire merchandise in exchange for a counterfeit bill—which established probable cause to believe that appellant had violated § 943.38 of the Wisconsin Criminal Code (Forgery). The fact that appellant was arrested for the commission of a federal offense is not controlling—the validity of the arrest must be tested by objective standards rather than the subjective intent of the arresting officer, and as long as the facts establish a valid basis for appellant's arrest, that arrest is not rendered invalid simply because the officer may have misapprehended the correct legal basis for his action. *See* Klingler v. United States, 409 F.2d 299, 303–305 (8th Cir. 1969), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110.

2. Appellant argues that, although access to the manager's office was somewhat restricted, it would not have been difficult for other per-

include all "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The question whether the eight bills had been in defendant's possession was a matter of fact "of consequence to the determination of the action." The bills themselves,[3] as well as the time and place where they were found,[4] had a "tendency" to make the "existence" of the fact of defendant's former possession of the bills more probable than it would be without such evidence within the meaning of the rule. That fact, in turn, had a tendency to prove that the first bill had not been passed innocently. Or, to put the matter in more familiar terms, appellant's argument more properly concerns the weight, rather that the admissibility, of the evidence.

## III.

During its deliberations, the jury sent a note to the trial judge stating "would like to read or have read to us the testimony of Mary," the employee to whom McCoy had tendered the counterfeit bill. Without consulting counsel, the court responded: "I have your request that the testimony of Mary Sleiziz be reread to you. I regret that this is not permissible. You will be required to proceed on the basis of your best recollection concerning her testimony."

Appellant correctly argues that the trial judge, in his discretion, could have complied with the jury's request. Relying on the judge's statement "that this is not permissible," he contends that the judge erroneously failed to exercise that discretion and thereby committed an er-

ror requiring reversal, or at least a remand directing that the district judge state on the record whether his ruling reflected an exercise of his discretion or a mistaken view of the law.

Quite different reasons may justify committing a given matter to the discretion of the trial judge. There are some matters—such as the particular ritual to be observed at the opening of court—for which the judge may fashion his own rules, provided always that his deviation from tradition is not so extraordinary as to call for supervisory review. In such matters, neither strict adherence by the district judge to a given procedure, nor even his failure to realize that other choices are available, will be held to constitute error.

There are other matters—such as the sentencing decision—in which the choice of alternatives is left to the trial judge, not because the decision is of little importance, but rather because the factors which may properly influence his decision are so numerous, variable and subtle that the fashioning of rigid rules would be more likely to impair his ability to deal fairly with a particular problem than to lead to a just result. In such situations, it may be important that the record demonstrate that the judge has made an informed choice—that is to say, that he both understood the range of his discretion and considered the relevant factors bearing on the individual situation before him. *See, e. g.,* United States v. Miller, 495 F.2d 362, 364–365 (7th Cir. 1974).

This case is surely not in the latter category, though admittedly it is not at the other extreme either. It is in an area in which we do not consider it essential for the record to disclose the ba-

sons, particularly employees, to enter the office and place the money under the ashtray. In addition, defendant points out that since the store's employees had been instructed to watch for counterfeit currency, it follows that counterfeit bills had been passed at the store on other *occasions.*

3. A Secret Service agent testified on behalf of the government that the eight counterfeit bills were of the same character and caliber as the bill tendered by McCoy to the store employee,

and that all nine bills had been produced on the same printing press. Furthermore, he testified that one of the additional eight bills bore the same plate number, series, Federal Reserve District and serial number as the bill tendered by McCoy to the store employee.

4. After being taken to the manager's office, McCoy was left unattended for a sufficient amount of time to allow him to conceal the additional counterfeit bills under the ash tray.

sis for the judge's decision. Despite the form of his response to the jury's request, we are confident that the judge was fully aware of his authority to read excerpts from the transcript to the jury. But even if we were to make the unlikely assumption that he was not, we believe a judge could properly adopt and follow a routine practice of declining such requests unless supported by some extraordinary showing of need. No such showing is reflected on this record.

The judgment is

Affirmed.