## State of Vermont v. David A. Goodrich

[564 A.2d 1346]

No. 88-010

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed April 14, 1989

*Kevin G. Bradley, Chittenden County State's Attorney*, Burlington, and *Jo-Ann Gross, Law Clerk (On the Brief)*, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General*, and *Henry Hinton, Appellate Defender*, Montpelier, for Defendant-Appellant.

**Morse, J.**   Defendant David A. Goodrich was convicted of burglary, 13 V.S.A. § 1201(a), following a jury trial. Defendant appeals, claiming error in the admission at trial of evidence of his prior convictions. We hold that their admission was reversible error and remand for a new trial.

Early in the morning of February 3, 1987, David Hathaway was awakened in his home in Burlington by noises coming from the living room. Upon going downstairs he discovered defendant standing in the room holding numerous jackets. According to Mr. Hathaway's testimony, defendant was shining a flashlight on a stereo system. The only other light in the room came from two television sets turned on without the volume. There was a fight, Mr. Hathaway's roommate came down, and the two men managed to hold defendant on the floor while the police were called. During this time, defendant told the two men, according to their testimony, that he had been looking for a friend. The police arrived and arrested the defendant. He was wearing a jacket belonging to

Mr. Hathaway, which contained Mr. Hathaway's wallet. Of the jackets he had been holding, all but one belonged to Mr. Hathaway or his roommates. About an hour later, a blood alcohol test performed on defendant revealed a reading of .231.

Defendant testified that he had visited several bars that evening, as he was feeling depressed over his brother's recent death. He consumed considerably more alcohol than he was accustomed to. The last thing defendant claims to remember that night is leaving the Steer & Stein Restaurant; he claims not to remember the events at Mr. Hathaway's house. His defense at trial was inability to form the requisite intent to commit larceny due to intoxication.

Before trial, defendant moved to prevent the introduction of his prior convictions. All occurred within the last 15 years, the most recent in 1981. They include the following: 1975, petit larceny; 1976, breaking and entering in the daytime; 1976, possession of stolen property; 1976, breaking and entering in the night; 1977, attempted breaking and entering in the daytime; 1980, breaking and entering in the daytime; 1980, attempted breaking and entering in the night; and 1981, concealment of stolen property.[1] The State sought to use these convictions to impeach defendant's testimony that he was intoxicated and incoherent at the time of the offense. V.R.E. 609. The trial court denied defendant's motion, and all prior convictions were deemed admissible at trial for purposes of impeachment. The State also argued that the prior convictions should be allowed under V.R.E. 404(b) to establish intent, motive, opportunity or lack of mistake or accident. The judge ruled that the prior convictions would be admissible solely for impeachment.[2]

Defendant brought a second motion in limine seeking to prohibit the State from questioning defendant's expert witness, Dr. William H. Farrell, on defendant's criminal record.[3] The court de-

---

[1] The offenses of breaking and entering in the daytime and the nighttime are no longer distinguished; both are subsumed under the burglary statute. 13 V.S.A. § 1201.

[2] The State concedes on appeal that the convictions were not admissible under V.R.E. 404(b).

[3] Defendant had been referred to Dr. Farrell for a psychological evaluation concerning his state of mind at the time of the offense. He administered several tests, performed a mental status evaluation, and took a social and family history of defendant. Based on his findings, Dr. Farrell concluded that it was "quite likely that this man was experiencing a blackout at [a blood alcohol level of]

nied this motion. Although not stated by the court or parties, this ruling may have been based on V.R.E. 705, which permits inquiry into the facts underlying an expert's opinion.

At trial, defendant renewed his motion to exclude the prior convictions. The court again denied the motion and allowed into evidence the convictions listed above. Both defendant and Dr. Farrell then acknowledged the convictions in their testimony.[4] The jurors were instructed at the close of the case that they could use the information only to access the credibility of the defendant. The judge cautioned the jury not to use the prior convictions as evidence of defendant's propensity to commit burglaries.

Defendant argues that the convictions were inadmissible for any reason.[5]

## I.

### V.R.E. 609

On the question of impeaching defendant's credibility, defendant's argument is threefold. First, he claims that the trial court committed error as a matter of law in permitting impeachment with the convictions of breaking and entering and possession or concealment of stolen property. Defendant relies on *State* v. *LaPlante*, 141 Vt. 405, 449 A.2d 955 (1982), for the proposition that the State must affirmatively demonstrate circumstances indicating that these prior convictions were for crimes involving moral turpitude. Since that showing was not made here, according to defendant, his conviction must be reversed. Defendant con-

---

.231," that defendant's cognitive abilities at that level of consumption would be "[v]ery seriously affected," and that he probably did not possess the ability to form the necessary intent to commit a larceny.

[4] As it happened, defense counsel brought out both defendant's and Dr. Farrell's knowledge of the prior convictions in her direct examination of the witnesses to "soften the blow." Defendant suffered prejudice by the ruling just as if the convictions were first elicited in the State's cross-examination of the witnesses. See *State* v. *Ryan*, 135 Vt. 491, 495-96, 380 A.2d 525, 527-28 (1977).

[5] Defendant raises a further claim on appeal. The evidence showed that one of the jackets defendant was holding when he was discovered in Mr. Hathaway's living room did not belong to Mr. Hathaway or his roommates. Defendant claims that the prosecutor improperly implied to the jury that this fact suggested defendant had committed another burglary earlier that night, thereby depriving defendant of a fair trial. Because we reverse on the prior convictions issue, we do not reach the merits of this claim.

cedes that the petit larceny conviction is not excludable on this basis alone.

Second, defendant claims that the trial court abused its discretion under *State* v. *Gardner,* 139 Vt. 456, 433 A.2d 249 (1981), which sets forth several factors that must be evaluated by a trial court before it may permit impeachment by prior convictions. Third, defendant argues that admission of his prior convictions for impeachment violated his constitutional right to testify before an impartial jury.

■ By statute, a prior conviction is admissible in evidence "to affect the credibility of a witness" only if the conviction occurred within fifteen years and the crime involved moral turpitude. 12 V.S.A. § 1608; V.R.E. 609.[6] The 15-year and moral-turpitude requirements merely establish the "outer limit to admissibility," within which the trial court must exercise its discretion, by weighing the probative value of the evidence against its prejudicial effect. *State* v. *LaPlante,* 141 Vt. at 408, 449 A.2d at 956; *State* v. *Foy,* 144 Vt. 109, 113. 475 A.2d 219, 222 (1984); V.R.E. 609. In *Gardner,* 139 Vt. at 460-61, 433 A.2d at 251-52, we listed several factors for consideration by the trial court in the balancing it must perform. While the court's ruling is discretionary, "the court must not give 'short shrift' to the *Gardner* criteria." *State* v. *Boucher,* 144 Vt. 276, 280, 478 A.2d 218, 220 (1984) (quoting *State* v. *Jarrett,* 143 Vt. 191, 193, 465 A.2d 238, 240 (1983)). Here it is evident from the record that the trial court did not adequately comply with the *Gardner* standards. Consequently, we need not address defendant's first claim that the convictions were not for crimes of moral turpitude.

*Gardner* overruled this Court's holding in *State* v. *Manning,* 136 Vt. 436, 438-39, 392 A.2d 409, 410-11 (1978), that the State, as a matter of right, could impeach a witness with any conviction involving moral turpitude within 15 years. *Gardner* held to the contrary that "the cross-examination of a witness concerning prior convictions is subject to the discretion of the trial court." 139 Vt. at 458, 433 A.2d at 250. Evidence otherwise admissible

---

[6] The Vermont Supreme Court on December 8, 1988, substantially amended Rule 609. The amended version replaces the term "moral turpitude" — a concept which has spawned case law both turbid and turgid — with more precise and manageable standards for determining admissibility of prior convictions for impeachment. The new rule is effective March 1, 1989.

may be excluded if it is unduly prejudicial. The balance to be struck is stated as follows:

> Admissibility [of prior convictions for impeachment] shall depend upon a determination by the court that the probative value of this evidence outweighs its prejudicial effect.

V.R.E. 609(a).

■ We recognized in *Gardner,* and emphasize again today, that impeachment by prior convictions is "extremely prejudicial to the defendant in a criminal case." 139 Vt. at 458, 433 A.2d at 250 (citing C. McCormick, Evidence § 43, at 89 (Cleary ed. 1972)).

> Despite limiting instructions a jury is likely to conclude that a defendant with a criminal record is a criminal by nature and likely to be guilty of the offense presently charged. Or the jury may conclude that the defendant is a person who deserves punishment regardless of his guilt of the offense charged.

*Id.* (citations omitted). Because of these dangers, when the witness to be impeached is the defendant in a criminal trial, it is "necessary for the trial court to exercise its discretion most carefully." *Id.* at 460, 433 A.2d at 251. See also *State* v. *Bushey,* 142 Vt. 507, 510-11, 457 A.2d 279, 281 (1983) (projection of former convictions into trial "practically deprives [defendant] of the legal presumption of innocence [and] inevitably prejudices the jury against him") (quoting *State* v. *Cameron,* 126 Vt. 244, 250, 227 A.2d 276, 280 (1967)).

■ *Gardner* then listed other factors that should enter into the court's decision whether to admit prior convictions. Every one of these factors points to exclusion of the convictions in the case at bar.

First, "[t]he court must consider the nature of the crime to be used for impeachment." 139 Vt. at 460, 433 A.2d at 251. Five of the eight convictions admitted into evidence were of burglary or attempted burglary. The current charge, of course, is also burglary. Yet the court apparently paid no heed to our warning in *Gardner*: "An especially severe possibility of prejudice exists when the crime to be introduced for impeachment is similar to or the same as the crime for which the defendant is accused." *Id.* at 460-61, 433 A.2d at 251.

Second, the court must consider the length of the defendant's criminal record. "An extensive recitation of the crimes for which the defendant has been convicted is likely to be highly prejudicial." *Id.* at 461, 433 A.2d at 251-52. An "extensive recitation" is precisely what was elicited at this trial. Again, the trial court did not weigh this factor against admissibility of the prior convictions.

Third, the court should consider the length of time that has passed since the conviction sought to be admitted: "Older crimes are less relevant to the issue of the defendant's credibility." *Id.* at 461, 433 A.2d at 252. That the convictions here occurred eight to thirteen years prior to trial was considered by the court, but apparently deemed less important than that they formed a "pattern," which was weighed in favor of admissibility: "In and of itself [the 1975 larceny conviction] would seem to be remote in time, but [it is] part of the pattern here of crimes that . . . continued for a period of . . . five years."

Finally, we stated in *Gardner*:

> The court above all will have to evaluate the relative importance of the defendant's testimony and the need for impeachment by prior conviction in each individual case. If the defendant has no means of defense other than his own testimony, and the fear of impeachment is likely to prevent him from testifying, a court may be reluctant to permit such impeachment. A court should more readily exclude evidence of prior convictions when there are other means of impeachment available.

*Id.* (citations omitted). Considering this factor in light of the defense theory in the present case again points to exclusion. Defendant maintained that he did not remember the events at David Hathaway's apartment. He did not deny any of the facts introduced by the State; his defense was only that he had not the mental capacity to form the requisite intent. To place this defense persuasively before the jury, he needed to testify as to his previous experiences with alcohol, his depression that night relative to his brother's recent death, his visits to several bars that evening, and his state of mind upon coming-to in the hospital. The State did not contradict defendant's testimony; the thrust of the State's argument was that defendant was capable of forming, and did form, the necessary intent to commit larceny. In support,

the State pointed to several facts — the television sets on for light, the flashlight pointed at the stereo, the jacket underneath defendant's own jacket, the "story" defendant told Mr. Hathaway — to convince the jury of defendant's high cognitive functioning that night. The defense therefore did depend on defendant's own testimony, and the State amply demonstrated other means of impeachment.

These facts are in sharp contrast to the facts in *State* v. *Boucher,* where we affirmed the admission of prior convictions for impeachment. 144 Vt. at 281, 478 A.2d at 221. In *Boucher,* defendant was implicated in an assault and robbery by a single witness who named defendant as his accomplice in the crime. Both defendant and the witness had been convicted of prior crimes. Defendant denied any involvement and testified that he was not present at the scene. We noted that the "trial was, in essence, a credibility contest" between the defendant and the State's witness. *Id.* at 279, 478 A.2d at 220. See also *State* v. *DeJoinville,* 145 Vt. 603, 606, 496 A.2d 173, 175 (1985) (admission of welfare fraud conviction admissible at trial for sexual assault where "outcome hinged largely on the credibility of two of the witnesses involved"); *State* v. *Foy,* 144 Vt. at 114-15, 475 A.2d at 223 (trial court properly admitted prior convictions where, despite lengthy record and similarity of offenses, "they constituted the only substantial means of impeachment available to the State"). In the case at bar, defendant did not deny his involvement; he denied the requisite mental capacity. The State's case in turn did not ultimately depend on any witness's credibility; it depended on the cumulative effect of essentially uncontroverted circumstantial evidence of defendant's mental capacity.

In sum, the trial court either failed to apply or misapplied the *Gardner* criteria governing the admissibility of prior convictions that meet the statutory threshold. While we may assume compliance with *Gardner* when the record is silent, *State* v. *Jarrett,* 143 Vt. at 193, 465 A.2d at 240,[7] this record demonstrates precisely the failure to conform to "the principles enunciated in *Gardner*" evident in *Jarrett. Id.* at 194, 465 A.2d at 240. In *Jarrett,* reversing a burglary conviction, we stated:

---

[7] Effective March 1, 1989, V.R.E. 609(a) requires the trial court to "articulate on the record the factors considered in making its determination."

[I]t is quite apparent from the transcript below that the trial court . . . gave only "short shrift" to all but one of the *Gardner* criteria, i.e., whether each of the prior convictions involved falsehood. This is not adequate compliance with *Gardner* standards.

*Id.* at 193, 465 A.2d at 240. Compliance with *Gardner* was equally inadequate here.

█ While discretionary rulings will be upheld if there is a reasonable basis for the ruling, we will find error upon a showing that the court exercised its discretion "for reasons clearly untenable or to an extent clearly unreasonable." *State* v. *Savo,* 141 Vt. 203, 208, 446 A.2d 786, 789 (1982). That showing has been made here. We hold, therefore, that the court abused its discretion by admitting defendant's prior convictions for impeachment.

We do not reach defendant's constitutional claim. Defendant would have us declare unconstitutional the impeachment of criminal defendants with prior convictions. In accordance with well established practice, we refrain from deciding the constitutional question since it is not necessary for the disposition of this case. See *State* v. *Patnaude,* 140 Vt. 361, 368, 438 A.2d 402, 404 (1981).

At retrial, the State might seek to introduce defendant's prior convictions under V.R.E. 705. Therefore, we will consider the admissibility of defendant's prior convictions under that rule.

## II.

### V.R.E. 705

█ On appeal the State argues that it was permissible to inquire into Dr. Farrell's knowledge of defendant's prior convictions under V.R.E. 705. That rule provides:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

The State relies on *State* v. *Smith,* 140 Vt. 247, 437 A.2d 1093 (1981), and *State* v. *Mecier,* 138 Vt. 149, 412 A.2d 291 (1980). In *Smith,* the defendant argued that his right to confront witnesses under the Sixth Amendment was violated by the State's cross-

examination of defendant's expert psychiatrist concerning the witness's opinion of mental reports prepared by other doctors. We wrote: "When a witness uses certain sources for the foundation of his opinions, examination of those authorities is obviously a proper strategy." 140 Vt. at 260, 437 A.2d at 1099. In *Mecier,* the defendant claimed that the State's cross-examination of defendant's psychiatrist violated his physician-patient privilege. We held there was no violation of the privilege where the cross-examination was used to impeach the expert's testimony: "In order to attack the credibility of the doctor's opinion, the State elicited the factual basis of it and attempted to prove its inaccuracy." 138 Vt. at 155, 412 A.2d at 295.

The State's reliance on these cases is misplaced. In both, it was not contested that the information sought to be elicited was relevant to the expert's opinion, thus complying with Rule 705's mandate "to disclose the underlying facts or data." This Court's conclusion was only that proper questioning under Rule 705 did not violate the rights asserted in those cases — confrontation of witnesses in *Smith* and the physician-patient privilege in *Mecier.*

This Court has held that " 'wide latitude should be allowed on cross-examination for the purpose of showing who and what the witness is, and that he is unreliable, prejudiced, or biased.' " *Smith,* 140 Vt. at 260, 437 A.2d at 1099 (quoting *State* v. *Berard,* 132 Vt. 138, 147, 315 A.2d 501, 508, *cert. denied,* 417 U.S. 950 (1974)). As wide as that latitude is, it is bounded by the fundamental requirement that evidence that is not relevant is not admissible. V.R.E. 402. Rule 705 may not be used to circumvent Rule 402. The evidence sought must either constitute facts underlying the expert's opinion, or tend to prove unreliability, prejudice or bias.

In addition, the "wide latitude" of permissible cross-examination of expert witnesses is qualified by V.R.E. 403, under which evidence, even if relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. While the balancing test of Rule 403 is a matter within the trial court's discretion, *In re Nash,* 149 Vt. 63, 66, 539 A.2d 989, 991 (1987), here we find, as we did above, that the court exercised its discretion "for reasons clearly untenable or to an extent clearly unreasonable." *State* v. *Savo,* 141 Vt. at 208, 446 A.2d at 789.

Rule 403 requires a balancing of probativeness and unfair prejudice. The substantial prejudice to defendant in bringing his

criminal record to the jury's attention through the testimony of Dr. Farrell is no less than it was through his own testimony. *Gardner's* central concern, that "a jury is likely to conclude that a defendant with a criminal record is a criminal by nature and likely to be guilty of the offense presently charged," 139 Vt. at 458, 433 A.2d at 250, remains the central concern here.[8] The trial court did not take into account, despite pertinent objections by defense counsel, the potentially severe prejudice to defendant.

Nor did the court adequately address the issue of probativeness. At best, the prior convictions might cast doubt on Dr. Farrell's opinion that defendant was unable to form the specific intent to commit larceny on the night in question. But the convictions were old. There was no link between them and the current charge. See *State* v. *Hurley,* 150 Vt. 165, 169, 552 A.2d 382, 385 (1988). Dr. Farrell's opinion was based on an extensive current evaluation of defendant, and knowledge of the effects of alcohol consumption. In fact, Dr. Farrell knew of the prior convictions and they did not influence his opinion, as defense counsel made clear at the pretrial hearing. Thus the prior convictions were hardly probative, if at all, of any unreliability, prejudice, or bias on Dr. Farrell's part. Cf. *State* v. *Percy,* 149 Vt. 623, 641, 548 A.2d 408, 418 (1988) (State psychiatrist's testimony on defendant's prior criminal acts held admissible where relevant to expert's opinion that defendant suffered from an "anti-social personality" rather than insanity).

Even if the prior convictions qualified as relevant under Rule 402 — a question we need not reach — the trial court abused its discretion under Rule 403. Defendant's prior convictions should not have been admitted into evidence for any purpose.

An error at trial does not warrant reversal unless the error is prejudicial. *State* v. *Nash,* 144 Vt. 427, 434, 479 A.2d 757, 761 (1984). The burden is on the State, however, to show that any error below was harmless. *State* v. *Catsam,* 148 Vt. 366, 372, 534 A.2d 184, 188 (1987); *Chapman* v. *California,* 386 U.S. 18, 24 (1967). The burden is a difficult one: The State must establish

---

[8] This is true even though Rule 609 (Impeachment by Evidence of Conviction of Crime) is not, strictly speaking, the applicable rule. We noted in *Foy* that the trial court's *Gardner* analysis is "similar to the balancing test of V.R.E. 403." 144 Vt. at 113, 475 A.2d at 222. The corollary is also true: The court's analysis of the admissibility of prior convictions under Rule 403 must consider the factors set forth in *Gardner* on admissibility under Rule 609.

" 'beyond a reasonable doubt that the jury would have returned a verdict regardless of the error.' " *Catsam*, 148 Vt. at 371, 534 A.2d at 188 (quoting *State* v. *Hamlin*, 146 Vt. 97, 106, 499 A.2d 45, 52 (1985)). The State here has not met its burden.

*Reversed and remanded for a new trial.*

Peck, J., dissents.