## State of Vermont v. Diane Moses

[618 A.2d 478]

No. 91-117

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 23, 1992

*Christopher C. Moll*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Charles Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Dooley, J.** Defendant challenges her probationary sentence, which was imposed after a plea of no contest, contending that five special conditions of probation included in the sentence are

not reasonably related to the crimes committed or are unnecessarily restrictive. Although challenged on similar grounds, each of the five conditions presents a separate inquiry. Two of the challenged conditions are reasonably related to ensuring that defendant avoids future criminal activity; those conditions are affirmed. We hold that the remaining three special conditions are overbroad and unnecessarily restrictive; they are reversed and the case remanded.

The State's charges in this case are set forth in the affidavit of the investigating officer. Defendant took an elderly woman into her home and confined her for a period of almost fifteen months. During this time, defendant forced the woman to turn over her pension income to defendant. She physically abused the woman on numerous occasions and, on at least one occasion, sexually abused her. She was aided in this abuse by her boyfriend and other men.

Defendant was arrested and subsequently pleaded no contest to kidnapping, one count of elderly abuse, and two counts of assault. She was sentenced to ten to twenty years on the felony kidnapping charge and zero to six months on each of the remaining charges. All the sentences were suspended except for six months to serve, and defendant was placed on probation. In addition to certain standard conditions, the trial court imposed the following special conditions:

18. You shall reside where your Probation Officer directs;
23. You shall not open, maintain, or possess any materials for a checking account;
24. You shall not receive as [a] representative payee[,] nor in any other manner[,] monies belonging to another person than yourself;
25. You shall not associate with any person prohibited by your probation officer;
26. [You] must consent in writing to all inspections and enforcement of these conditions, including search and investigation without warrant when necessary.

At sentencing, defendant objected to these special conditions, arguing that each of the conditions either bears no reasonable relation to the crime committed, is unnecessarily restrictive, or fails to place defendant on sufficient notice of what conduct violates the terms of probation. This latter problem, defendant ar-

gued, is the result of the probation officer's unlimited discretion to determine the conditions. The court, noting that defendant has a history of taking elderly people into her home to prey upon them, overruled the objections and expressed a "very deep and a very abiding concern" for the safety of others in support of the imposition of special conditions. Defendant subsequently filed a motion for correction and modification of sentence, which the trial court denied without hearing.

■ Vermont law authorizes a sentencing court to set probation conditions that reasonably relate to the crime committed or that aid the probationer in avoiding criminal conduct. 28 V.S.A. § 252(b)(13); see *State v. Whitchurch*, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990) (citation omitted); *State v. Mace*, 154 Vt. 430, 435, 578 A.2d 104, 107 (1990). We further stated in *Whitchurch* that probation conditions "'should not be unduly restrictive of the probationer's liberty or autonomy.'" 155 Vt. at 137, 577 A.2d at 692 (quoting American Bar Association, Standards for Criminal Justice 2d § 18-2.3(e)). Although the trial court has discretion in determining appropriate conditions of probation, we are required to find error where, applying proper legal standards, discretion has been exercised to a clearly unreasonable extent. See *State v. Goodrich*, 151 Vt. 367, 375, 564 A.2d 1346, 1351 (1989).

■ Two of the conditions imposed by the trial court satisfy the Vermont standards on probation conditions. The condition that defendant not receive monies as a representative payee (condition 24) is clearly related to her criminal activities. The record establishes that defendant's desire to control the funds of her elderly victims was one of the primary motivating forces of her behavior. Curtailing her ability to handle monies in a representative capacity is closely linked to eliminating the conduct for which defendant has been placed on probation. Thus, this restriction is proper.

■ The condition that defendant not associate with any person prohibited by her probation officer (condition 25) is an acceptable term of probation in the proper case. The American Bar Association Standards for Criminal Justice 2d § 18-2.3(f)(vii) authorize conditions that restrict a probationer from "consorting with specified types of people." See also

Weissman, *Constitutional Primer on Modern Probation Conditions*, 8 New Eng. J. on Prison L. 367, 376 (1982) ("associational restrictions supported by evidence of a reasonable relationship to crime prevention will be upheld"). Where the potential class of victims is broad—and individual associations are not always foreseeable or easily subject to prior approval—the condition necessarily must retain a degree of flexibility to facilitate its proper implementation.

■ The special condition restricting defendant's freedom of association is reasonably related to the underlying offenses, in which the victim suffered abuse at the hands of both defendant and her male companion. The condition is intended to prevent defendant from associating with individuals who might induce her to take advantage of weak, frail people of the type she has previously abused, as well as such vulnerable potential victims. Imposition of this probation condition is within the reasonable discretion of the trial court.

■ The three remaining challenged probation conditions are overbroad and excessively restrictive and, as such, are clearly unreasonable extensions of judicial discretion. First, condition 23, which prohibits defendant from maintaining a checking account, does not meet the *Whitchurch* requirement that a probation restriction be reasonably related to the crime, nor does it satisfy the requirement that the restriction not be "unduly restrictive" of defendant's autonomy. As the Second Circuit Court of Appeals has explained in describing a standard similar to ours:

> [A] condition is *related* to the goals of probation if it is designed, in light of the crime committed, to promote the probationer's rehabilitation and to insure the protection of the public. A condition is *reasonable* if it is not unnecessarily harsh or excessive in achieving these goals . . . . [C]onditions that restrict a probationer's freedom must be especially fine-tuned.

*United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986) (emphasis in original) (citations omitted); see also *Higdon v. United States*, 627 F.2d 893, 897 (9th Cir. 1980) (otherwise permissible condition of probation is invalid if negative impact on probationer is "substantially greater than is necessary to carry out [its] purposes").

This restriction is hardly "fine-tuned" to accomplish its purpose. It is so indirectly related to the conduct to be prevented that it can only have a minor impact. Defendant can maintain a savings account or enlist the aid of third parties with checking accounts. She will have to establish a relationship with some business, bank or person to cash checks because her income is likely to come by check. It is not clear why that business, bank or person would refuse to cash third-party checks.

On the other hand, the lack of a checking account is a serious impediment to conducting a normal and desirable economic life. Everyday chores like paying a utility bill become far more difficult without a checking account. Before depriving a probationer of this basic tool of economic interaction, a sentencing court should ensure that the measure is closely linked to the conduct to be regulated. Given the highly attenuated connection of this restriction with defendant's criminal activity, we cannot conclude that the condition is reasonable.

It takes little creativity to see that other restrictions would provide much more public protection, with less imposition on defendant's legitimate needs. For example, defendant could be required to provide check returns to the probation officer to demonstrate that she has not engaged in the type of conduct for which she has been convicted. It is no coincidence that the only reported cases involving a no-checking-account probation condition relate to defendants who have been convicted of passing bad checks.[1] See, e.g., *People v. Burden*, 205 Cal. App. 3d 1277, 1281, 253 Cal. Rptr. 130, 132 (1988); *Wood v. State*, 378 So. 2d 110, 110–11 (Fla. Dist. Ct. App. 1980); *State v. Petroff*, 757 P.2d 759, 760 (Mont. 1988). This kind of restriction, as imposed in this case, is far from the fine-tuning our law requires.

A second condition, that defendant "reside where [her] Probation Officer directs (condition 18)," suffers from different, but related, defects. We agree with the trial court that the circumstances of this case warrant a restriction on defendant's residence, or on those with whom she may reside. Although

---

[1] At sentencing, the trial court learned that defendant had passed bad checks as a teenager. That conduct is now so remote that the court did not rely on it in establishing the probation condition. It is not relevant to the question before us.

such a condition is not itemized in the authorizing statute, 28 V.S.A. § 252(b), the condition is "reasonably related to [defendant's] rehabilitation." 28 V.S.A. § 252(b)(13). Rather than fashioning a specific restriction relating to defendant's choice of residence, however, the court turned over to a probation officer the complete power to determine defendant's residence, with no guiding standards. Under this condition, the probation officer can require defendant to live in a specific place, within or without the State of Vermont, for reasons unrelated to rehabilitation or the prevention of further criminal offenses.

It is improper for the court to delegate the power to impose probation conditions to a probation officer. See American Bar Association, Standards for Criminal Justice 2d § 18-2.3(c)(ii) ("Probation officers should have authority to implement judicially prescribed conditions, but the conditions must be sufficiently precise so that probation officers do not in fact establish them."). We have not analyzed probation condition issues in terms of whether a delegation of power to impose them is proper, but we have enforced conditions where probation officers are given discretion to implement conditions imposed by the court. See, e.g., *State v. Sanborn*, 155 Vt. 430, 432–35, 584 A.2d 1148, 1149–52 (1990) (probation revoked for breach of condition that defendant "participate fully in any program to which you may be referred by the court or your probation officer"). Delegation of the implementation of probation conditions is necessary to require a defendant to participate in rehabilitative programs appropriate to the defendant's needs at a particular time in the probation period. Similarly, the condition in this case restricting defendant's freedom of association delegates to her probation officer only the power to properly implement the condition. The court cannot at sentencing fully determine what associations the probationer will develop in the future.

Condition 18 goes beyond implementation. In effect, it gives open-ended authority to the probation officer to create any location-of-residence probation condition the officer deems appropriate. It is this type of wholesale delegation that other courts have struck down. See *In re T.L.D.*, 586 So. 2d 1294, 1294 (Fla. Dist. Ct. App. 1991) ("trial court reversibly errs when it delegates judicial responsibility to a probation officer"); *McDonald v. State*, 442 S.W.2d 386, 387 (Tex. Crim. App. 1969) (condition

that probationer "remain within the confines specified by the Probation Officer" invalid because it enabled the officer to determine a condition of probation and alter it from time to time at his discretion without the approval of the court). Like the checking account provision considered above, this condition is unduly restrictive of the probationer's liberty and autonomy and is not fine-tuned to the specific rehabilitative and preventative goals applicable to this case. The court is capable of creating more precise standards to guide the probation officer in imposing restrictions on defendant's residence. Unlike interpersonal contact, which is intimately connected with associational rights, the changing of one's residence is not an incident of daily life; there is no reason why the court cannot anticipate the relevant issues and construct a proper condition. This is not an instance where the court must authorize a probation officer to use substantial discretionary power to implement the probation condition.

Further, we are disinclined to uphold an overbroad delegation to the probation officer simply because defendant can seek court intervention if she finds the officer's requirements oppressive. Under this rationale, the court could leave all conditions to the probation officer. It puts the court in the position of refereeing disputes between the probationer and the officer with no guiding standards to ensure that its decisions are not arbitrary. Such an approach depends for fairness on the probationer coming forward to challenge decisions of a person who has a great deal of power over her life. To avoid these consequences, the Legislature placed the power to impose probation conditions on the court, and not on the corrections department and its employees. We should not ignore that legislative direction.

The final special probation condition, requiring defendant to consent in writing to enforcement of the conditions of probation through "search and investigation without warrant when necessary (condition 26)," presents two issues. The first is whether defendant can challenge this condition on direct appeal of her sentence or, alternatively, must wait until a warrantless search actually occurs. If defendant's challenge survives this threshold inquiry, we then must address the merits of her claim. We hold that defendant's direct appeal of this probation condition is

proper, and that the condition itself is overbroad and violates defendant's Fourth Amendment rights.

■ For four reasons, a challenge to this condition is appropriate on direct appeal of defendant's sentence. First, the mere presence of the condition invades defendant's privacy to such an extent that she may change her activities due to the fear that she may be the subject of a search at any time and for any reason. This invasion of privacy is sufficient to warrant judicial review of the probation condition. See *Commonwealth v. LaFrance*, 402 Mass. 789, 791 n.3, 525 N.E.2d 379, 381 n.3 (1988) (threat of unlawful search at any time and place is enough to warrant judicial review).

■ Second, defendant may not be able to challenge the condition by an alternative means. Although we have not ruled on the question, many courts have concluded that an evidentiary exclusionary rule should not apply, at least in some circumstances, in probation revocation proceedings. See, e.g., *Payne v. Robinson*, 207 Conn. 565, 572, 541 A.2d 504, 507 (1988) (collecting cases); *State v. Martinez*, 811 P.2d 205, 210 n.6 (Utah App. 1991) (listing cases). If defendant is denied a remedy now, she may be left without a remedy altogether; the ability to challenge the probation condition following an unlawful warrantless search would be essentially worthless if the evidence obtained thereby remains admissible in a later probation revocation proceeding against her.

■ Third, this condition is imposed so that defendant will consent to waiver of her Fourth Amendment rights in return for the opportunity to avoid incarceration. See *People v. Bravo*, 43 Cal. 3d 600, 608, 738 P.2d 336, 341, 238 Cal. Rptr. 282, 287 (1987), *cert. denied*, 485 U.S. 904 (1988). Again, we have not ruled on the question, but many courts have held that such a waiver is complete and the probationer retains no enforceable Fourth Amendment rights. See 4 W. LaFave, Search and Seizure § 10.10(b), at 133 (2d ed. 1987). As in the second point above, the failure to recognize now the potential impact of this condition may mean that defendant is put in the position of permanently forfeiting the right of review of the search condition. It is preferable to avoid an improper result based on an unfair waiver by allowing review now.

Fourth, ·this is a recurring policy question that can be resolved at this time. We see a need, because of the applicability of this issue to other probationers, to provide guidance to sentencing courts and state law enforcement and corrections officials. It would be decidedly more difficult to address the issue in the context of enforcement proceedings. As discussed below, the failure to resolve it now may make the condition unusable. It is better that we narrow an overbroad condition at the outset, rather than face the issue after the State has relied on the condition in conducting a search. We agree with the reasoning of the Hawaii Supreme Court, which addressed a similar question:

> [I]f more than a few probationers are in constant jeopardy of being divested by judicial fiat of statutory and constitutional protection that should rightfully be theirs, our supervisory duty would render the prevention of such error obligatory, though the prudential rules [of judicial self-governance] may counsel against the consideration of this appeal.

*State v. Fields*, 686 P.2d 1379, 1387 (Haw. 1984). We therefore proceed to an assessment of the merits of defendant's challenge to this probation condition.

■ ■■■ The condition allowing warrantless searches is too broad and·must be narrowed to meet constitutional requirements. The leading case under the United States Constitution is *Griffin v. Wisconsin*, 483 U.S. 868 (1987), where the criminal defendant-probationer challenged the admission of evidence obtained by the State in a warrantless search of his home. The United States Supreme Court upheld admission of the evidence because the search was conducted pursuant to a valid state statute. The statute authorized searches where the parole officer had "reasonable grounds" to believe a violation of probation conditions had occurred, and articulated factors to be considered in making such a determination. *Id.* at 872–80. Initially, the Court noted that, regardless of any probation condition that authorizes warrantless searches, the Fourth Amendment prohibition against unreasonable searches applies to probationers. *Id.* In assessing the reasonableness of the state statutory scheme, the Court balanced the privacy rights of probationers against the "special needs" of the state in the probation context.

Based on a probationer's reduced expectation of privacy and the legitimate concerns of the state in law enforcement, the Court concluded that the statutory scheme permitting warrantless searches of a probationer's property was reasonable under the Fourth Amendment.[2]

It is important to emphasize that the Court in *Griffin* did not embrace the "new principle of law" adopted by the Wisconsin Supreme Court that any warrantless search is valid if based on "reasonable grounds." *Id.* at 872. Instead, it upheld the search because "it was conducted pursuant to a valid regulation governing probationers," that is, the statute set standards for probationer searches, which were reasonable under the Fourth Amendment. *Id.* at 880. A number of state courts, following *Griffin*, have upheld searches on a similar basis. See, e.g., *State v. Burke*, 766 P.2d 254, 256–57 (Mont. 1988) (probation consent search made without warrant was permissible because based on "reasonable cause" standard of administrative rules); *Commonwealth v. Green*, 405 Pa. Super. 24, 33–35, 591 A.2d 1079, 1084–85 (1991), *cert. denied*, — U.S. —, 112 S. Ct. 1571 (1992) (approving search, on less than probable cause, conducted in compliance with accepted parole office practice and procedure).

In contrast to the Wisconsin law discussed in *Griffin*, Vermont has no statutory scheme regulating warrantless probation searches. In the absence of legislative direction regarding the grounds for these searches, some courts, following the *Griffin* rationale, have permitted sentencing judges to make careful findings establishing the Fourth Amendment reasonableness of particular search conditions imposed on specific probationers. See, e.g., *United States v. Schoenrock*, 868 F.2d 289, 292–93 (8th Cir. 1989). Under this approach, the key factor is whether the conditions are supported by the findings and are narrowly tailored to fit the circumstances of the individual probationer. *Id.* at 293; see also *United States v. Giannetta*, 909 F.2d 571, 575 (1st Cir. 1990) (just as statute in *Griffin* provided guidance and constraints that rendered probationary searches reasonable, sen-

---

[2] The Court declined to discuss whether it agreed with Wisconsin's definition of "reasonable grounds," noting that it was bound by the state's interpretation. It focused its analysis on the validity of the Wisconsin statute, not on the application of the statute to the facts of the case. 483 U.S. at 875.

tencing judge may provide similar function by narrowly tailoring "the need for and scope of any probation search conditions" to individual case). In this context, probation searches based on reasonable suspicion can have the same indicia of reasonableness as the search upheld in *Griffin. Giannetta,* 909 F.2d at 575.

Condition 26 does not provide guidance as to when the probationer may be searched without a warrant. Under the Fourth Amendment, a "necessary" search is not always a reasonable one. The condition is not based on findings that set a proper balance between probationer's privacy rights and the state's special needs and is not narrowly tailored to reflect that balance. We therefore remand probation condition 26 to the district court to draft a condition complying with this opinion.

Although there are no definitive factual findings because of the plea of nolo contendere, there is no doubt that the crimes committed by defendant were especially heinous. The nature of the crimes are a primary consideration in determining whether probation is appropriate and in fashioning probation conditions if probation is warranted. The purpose of the conditions is not, however, to punish defendant for the heinousness of the crime. Even where the criminal acts are this outrageous, we must ensure that probation is used to rehabilitate defendant and protect society. As we have detailed, the conditions here go beyond these legitimate purposes. We are confident that, on remand, the trial court can fashion appropriate conditions to meet the proper goals of probation within the standards we have outlined.

*Affirmed in part and reversed in part, and remanded.*

**Morse, J.,** concurring and dissenting. I agree with the Court upholding conditions 24 and 25 and striking condition 26, although I would not remand to allow the trial court to redraft it. I disagree with the extent of the Court's "fine-tuning" of conditions 18 and 23, because I believe it unnecessarily restricts the trial court's discretion in fashioning conditions of probation and departs from our usual standard of review.

The no-checking-account condition (condition 23) is viewed as "so indirectly related to the conduct to be prevented that it can only have a minor impact," and consequently not "reasonably related" to probationer's crimes and is "'unduly restrictive' of

[her] autonomy." This is, of course, a matter of judgment, in which different judges could reasonably disagree. That is why the law gives the trial judge, who was there on the scene, deference in making the judgment. See *State v. Bubar*, 146 Vt. 398, 405, 505 A.2d 1197, 1202 (1985) (trial court given "great discretion in setting conditions of probation"). The trial court's decision must not be reversed on appeal unless there is no rational support for it or, in words more familiar, an abuse of discretion. An abuse of discretion is not established because we disagree with the judgment. If reasonable judges could differ over a discretionary choice, it cannot be an abuse of discretion. A decision is an abuse of discretion when it is so far out of line that no reasonable jurist could agree with it. As Judge, now Justice, John Paul Stevens once wrote about discretion in making sentencing decisions:

> There are . . . matters—such as the sentencing decision—in which the choice of alternatives is left to the trial judge, not because the decision is of little importance, but rather because the factors which may properly influence his decision are so numerous, variable and subtle that the fashioning of rigid rules would be more likely to impair his ability to deal fairly with a particular problem than to lead to a just result.

*United States v. McCoy*, 517 F.2d 41, 44 (7th Cir. 1975).

A probationary sentence is one point on a continuum of possible punishments, the most restrictive being incarceration. A probationer's liberty is by definition restrictively conditioned because the probationer, having been convicted of criminal behavior, is subject to controls designed to rehabilitate her. 28 V.S.A. §§ 252(a) (condition must be "reasonably necessary to ensure that the offender will lead a law-abiding life or to assist [her] to do so"), 252(b)(13) (conditions permitted if "reasonably related to . . . rehabilitation"). A condition of probation is valid if it reasonably relates to the crime committed. *State v. Whitchurch*, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990). Defendant bears the burden of proving that a court abused its discretion in imposing a probation condition.

In deciding that the trial court abused its discretion in ordering condition 23, the Court points out ways defendant might circumvent the lack of a checking account in order to cash her

ill-gotten third-party checks and laments the "serious impediment" the lack of a checking account will have on her daily living. Lest we forget, the inconvenience of incarceration is far more onerous than probation. Although the Court's reasoning might persuade a sentencing court to avoid imposing that particular probation condition in the first instance, it is not so persuasive that I would overrule the trial court.

The record establishes the relationship between defendant's abuse of checking accounts and her criminal behavior. Because banks are reluctant to cash third-party checks for people without accounts, a checking account facilitates cashing the checks of others. Consequently, condition 23 makes it more difficult for defendant to negotiate checks she might get from potential victims. This condition is not unnecessarily restrictive; one out of four American families does not maintain a checking account. *Federal Reserve Bulletin* 5 (Jan. 1992).

The Court's attempt to distinguish cases upholding conditions similar to condition 23 on the ground that in those cases the defendant was convicted of passing bad checks is weak. Here defendant preyed on a large number of frail and mentally retarded people receiving and cashing their disability checks. That defendant was not convicted of passing a worthless check drawn on her own account, a misdemeanor, does not alleviate the threat posed by a defendant who kidnapped, abused, and assaulted people who provided her with the opportunity to part them from their money—a form of check robbery. As the trial court stated:

> I have a very deep and a very abiding concern for the safety of others as [to your] using checks, or receiving monies that belong to other people . . . [and] about who you take in to live with you, because . . . you're not taking in fallen birds or wounded people out of generosity. . . . You're taking in people . . . so that you can get at their money. . . . That's what I have to protect other people from, and that's what I have to protect you from.

The Court goes on to show how much more creative it is than the trial court by pointing out various alternative conditions. That, however, is not our job. We have a limited scope of review and, except to see that the outer permissible limits set by the Legislature are not exceeded, we are not to substitute our

choices for those of the trial court. Here, the Court has set inner limits of its own choosing that are not required by any statutory or constitutional authority.

As to condition 18, the Court agrees that a condition restricting defendant's place of residence is appropriate. Such a condition is designed to protect the community by restricting defendant's living options to minimize her opportunity to mistreat vulnerable people in the future. See *State v. Mace*, 154 Vt. 430, 436, 578 A.2d 104, 108 (1990) (liberty may be restricted "so long as the conditions have a reasonable nexus with rehabilitation of the defendant and protection of the public"). Here, the evidence supported a need to control defendant's residence as part of restructuring her life to prevent future criminality.

The Court's objection to condition 18 is that it lacks the specificity required to give defendant fair notice and provides no guidelines for a probation officer to determine what places are suitable for her as a residence. Defendant could not violate condition 18, however, unless she resided in a place other than as directed by her probation officer. *State v. Peck*, 149 Vt. 617, 619–20, 547 A.2d 1329, 1331 (1988) (fair notice may be provided by probation officer's instructions and directions).

The Court's concern with the lack of guidelines for the residence condition is unfounded. A probation condition should be understood in a reasonable way without requiring painstaking qualifiers to safeguard against an errant probation officer. Any probation condition can be unreasonably supervised, and a probationer may petition the court for relief if that should happen. The potential for abuse should not be presumed at the outset, and a probationer must demonstrate that a condition is prejudicial in fact, not merely in her imagination.

The Court says that the rationale supporting the court's ability to intervene would also necessarily allow the probation officer to set all conditions. It does not follow, however, that the sentencing court must so fine-tune the details of the conditions that nothing is left to a probation officer's discretion. After all, unlike most judges, probation officers are specifically trained, experienced professionals whose daily activity is largely devoted to supervising criminal offenders. Further, the unpredictability of future circumstances and the multifarious factual considerations that resist discrete characterization of criminal

behavior and sentencing needs militate in favor of some degree of flexibility in fashioning probation conditions.

My final concern with the exactitude the Court requires is the added appellate burden it will assuredly produce. When a defendant is dissatisfied with the degree of fine-tuning of a condition, today's decision does not require defendant to inform the sentencing court beyond an unspecific objection to the condition in its entirety. Defendant here simply objected to the conditions and had no suggestions whatsoever as to how to fine-tune them.

The last condition—consent to searches, warrantless or not—is not a condition that makes any sense, and I agree it should be struck. I would not, however, remand to the trial court to redraft it to comply with *Griffin v. Wisconsin.* The authority to search a probationer's person, premises, or possessions is governed by the Fourth Amendment and Article 11, which apply to everyone in Vermont. Such doctrines as "special needs," e.g., *State v. Berard,* 154 Vt. 306, 312, 576 A.2d 118, 121 (1990) ("special needs" justify warrantless searches in prison), or exigent circumstances—not a person's status as a probationer—may support a warrantless search under proper circumstances. Such a search is valid under constitutional analysis, not because a probationer signed away the constitutional right. Although one may voluntarily relinquish constitutional rights, a probationer in no sense consents within the true meaning of that term.

Nor do I find the approach approved here either workable or authorized by *Griffin.* In *Berard,* we upheld a random search of prison cells, which officers conducted under clear, objective administrative guidelines and which was not arbitrarily directed against an individual prisoner. *Id.* at 314, 576 A.2d at 122. This approach is consistent with *Griffin,* allowing a search pursuant to a policy, which was itself found reasonable under constitutional standards. The *Berard* approach offers individuals some protection from harassment because the policy and standards must be articulated in advance and applied equally to all. See *id.* at 314, 576 A.2d at 122–23 (guidelines "serve as basis to determine if prison policy in practice generally matches its theory, or whether corrections officials consistently and purposefully exercise prison cell searches for purposes beyond" asserted need for prison security).

In contrast, what the Court proposes today is not that the Legislature or an administrative agency set standards for all probationary searches, but that a judge set specific standards for a single probationer in findings and conditions that are an awkward cross between making probation policy and issuing search warrants. This function differs from that of a judge issuing a search warrant, neutrally reviewing specific facts and determining whether there is sufficient reason to permit a specific search under universal standards. Rather, the Court's opinion calls on judges to draft hypothetical search warrants, identifying in advance what searches of an individual will be reasonable and how and when they may be conducted. The Court's formulation is not only impractical, asking judges to anticipate future circumstances, but also unjust, making reasonableness a sliding scale rather than a uniform standard for all probationers. I do not envy trial judges performing this task.

I respectfully dissent.

**Allen, C.J.,** concurring and dissenting. I agree with the Court that conditions 24 and 25 should be upheld and that condition 26 should be struck and remanded to be rewritten. I join Justice Morse's dissent on conditions 18 and 23, however, which I believe should be affirmed for the reasons he states.

**Johnson, J.,** concurring and dissenting. I agree with the Court's decision to uphold conditions 24 and 25 and strike conditions 18, 23, and 26. I agree, however, with Justice Morse's reasoning that condition 26 should not be remanded.