2015 VT 50

# State of Vermont v. Gordon Campbell

[120 A.3d 1148]

No. 14-026

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

Opinion Filed March 27, 2015

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Eaton, J.** Defendant Gordon Campbell appeals two special sex-offender conditions of probation imposed upon him following being sentenced on a plea agreement for one count of aggravated assault and one count of sexual assault. We affirm one of the conditions but remand the other for the superior court, criminal division to either strike or revise the condition in accordance with this opinion.

¶ 2. In March 2006, defendant was charged in a three-count information with sexual assault, 13 V.S.A. § 3252(a)(1)(A),[1] aggravated assault, *id.* § 1024(a)(1), and violation of conditions of release, *id.* § 7559(e). The three charges stemmed from an incident occurring earlier that March during which defendant, after drinking several pitchers of beer at several bars in downtown Burlington, was approached on the street by a young man looking for directions to a local house and for some cocaine. During the encounter, defendant offered the young man money in exchange for oral sex. The young man declined and began to walk away, but defendant followed him, repeatedly asking for oral sex and offering to pay. After the young man told defendant that he was not a "faggot," defendant physically and sexually assaulted the young man behind a restaurant.

¶ 3. In March 2007, pursuant to a plea agreement with the State, defendant pled guilty to all three counts and was sentenced that August. Subsequently, defendant filed a post-conviction relief petition in the civil division and moved for summary judgment. The civil division granted defendant's motion for summary judgment, vacated defendant's sentence, and remanded to the criminal division with leave for defendant to withdraw his plea. Thereafter, defendant and the State negotiated a new plea agreement where

---

[1] In 2006, the Legislature revised 13 V.S.A. § 3252, relabeling subsection (a)(1)(A) as simply subsection (a)(1). See 2005, No. 192 (Adj. Sess.), § 10 (eff. May 26, 2006).

defendant agreed to plead guilty to the two assault charges and the State agreed it would dismiss the violation-of-conditions charge. A presentence investigation (PSI) and psycho-sexual evaluation were ordered to accompany the new plea agreement, and the court delayed accepting the agreement until it had a chance to review the PSI. Defendant, upon receipt of the PSI and prior to the sentencing hearing, filed various written objections to the PSI with the court, including objections to the two special sex-offender conditions of probation, in the language originally proposed by DOC in the PSI. Specifically, defendant challenged condition 42, requiring, in essence, that defendant submit to and pay for polygraph examinations; and condition 44, requiring, in essence, that defendant reside and work only where approved by his probation officer.

¶ 4. At the sentencing hearing, the court addressed each of defendant's objections prior to entering sentence and imposing conditions of probation. As to defendant's objection to condition 42, the polygraph condition, defense counsel argued that the condition should be stricken because defendant could not afford to pay for the examinations and, because such examinations are inadmissible in court, the examinations would be of no use to defendant's probation officer. Upon the court's inquiry into cost, defendant's probation officer indicated that such examinations generally cost a probationer $50, with the State paying any additional costs, and that defendant would most likely qualify for state-subsidized insurance, which would likely cover the $50 charge itself. The court expressed its confidence in condition 42 "as long as it's understood that the inability to comply with these conditions is not a violation if Defendant is unable to afford the cost." Defense counsel agreed to the modification, but continued to object "just as a general principle," arguing that defendant's probation officer might use a polygraph-examination result to allege a violation of probation but then would have nothing to support the charge in court. Upon inquiry from the court as to this objection, defendant's probation officer responded as follows:

> Your honor, I find that sometimes I have an offender that's doing well and has been doing well for a period of time, and, you know, at face value he's doing well. I'll put him on the polygraph examination and confirm my belief that they're doing well.

> Sometimes, things come up in the polygraph that, you know, we'll sit down and have a conversation with an offender after the polygraph's been done, maybe a week later. And then that offender is all of a sudden admitting to some of this behavior.
>
> I'm certainly not going to bring a violation that says I polygraphed [defendant] on such and such a date, and these are the results, and I'm violating these conditions.

On that explanation, the court imposed the condition over defense counsel's continued objection.

¶ 5. At this point in the sentencing hearing, defense counsel paused to address the ability to appeal imposition of the objected-to special sex offender conditions notwithstanding the fact that defendant and the State were entering into a plea agreement, inquiring:

> If the Court's inclined to impose [condition 42], then —
>
> . . . .
>
> without further objection, you know, we're in this hybrid format though, in terms of we have a plea agreement but we're apparently contesting the sexual offender conditions that are being imposed. So, I don't know, does that allow us room to appeal these?

The court responded that "I think — I think you probably can," to which defense counsel stated: "[S]o then my understanding is, although we've reached a plea agreement and we're waiving appeals as to most of what's, you know, in the plea agreement, we're reserving our right to appeal these sex offender conditions." The court responded "[f]ine," and the State was silent on this understanding.

¶ 6. As to condition 44, the condition restricting where defendant may live and work, after verifying with the court that the plea agreement preapproved defendant residing with his mother, defense counsel objected as follows: "And in terms of why the PO would be restricting where he could work or have the authority to approve it, we'd object to that." Thereafter, the court and counsel had the following exchange:

> The Court: Well, I don't expect this to be unnecessarily restrictive. I mean, if we're talking about a bar, for

example, that might not be a great place for [defendant] to work.

. . . .

Again, I don't expect that to be overly restrictive. And there's no reason for a probation officer to make this restrictive. I mean, part of the idea in most probation cases is to have people gainfully employed.

[Defense Counsel]: Indeed.

The Court: So, if it's anything within reason will be — it would be approved I would think, good grief. But something, you know, that — you know, like a bar might not be a great place for [defendant] to work —

[Defense Counsel]: Well, thank you, for considering it.

The Court: — since he appears to have a problem with alcohol.

[Defense Counsel]: Well, seven years dry in jail may have cured that, we're hoping.

The Court: Well — believe that —

[Defense Counsel]: But your point is well-taken, Your Honor. And [defendant] is happy to get an assessment and all of the treatment recommendations.

The Court: You know, I'll put in here "approval shall not be unreasonably withheld."

[Defense Counsel]: Certainly, thank you.

The Court: To make that explicit.

¶ 7. The court sentenced defendant to seven to thirty years, all suspended but seven years, and placed defendant on numerous standard and special sex offender conditions of probation, including conditions that defendant not contact or harass his victim, not consume alcohol or illegal substances, and not possess pornography, as well as conditions 42 and 44 as follows:

No. 42: You shall submit to and pay for periodic polygraph examinations at the direction of your PO or designee[.] These polygraph[ ] exams will be used to

determine your compliance w/supervision and treatment requirements — It shall not be a violation of probation if [defendant] cannot afford to pay for polygraph exams — [defendant] must attempt to apply for insurance/programs for which he is eligible . . . .

No. 44: You shall reside/work where your PO or designee approves (present residence with mother is approved). You shall not change your residence/ employment without the prior permission of your PO or designee-approval shall not be unreasonably withheld[.]

¶ 8. This appeal followed, with defendant seeking to vacate condition 42 on the grounds that it serves no legitimate purpose related to his rehabilitation or public safety and condition 44 on the grounds that it is overly broad and unduly restrictive and not reasonably related to protecting the public from the crime for which he was sentenced. The State argues that defendant did not preserve his objection to condition 44 and that imposing it did not constitute plain error, and further that condition 42 is valid.

¶ 9. ■ ■ The trial court may impose conditions of probation "such as the Court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so." 28 V.S.A. § 252(a). To this end, the trial court may impose one or more of seventeen statutorily enumerated conditions, *id.* § 252(b)(1)-(17), including requiring submission to periodic polygraph testing for certain sex offenders, *id.* § 252(b)(16). In addition to the enumerated conditions, the court may also require an offender to "[s]atisfy any . . . conditions reasonably related to his or her rehabilitation" and may prohibit otherwise lawful conduct if "the condition is reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety." *Id.* § 252(b)(18). As we have explained:

A condition is *related* to the goals of probation if it is designed, in light of the crime committed, to promote the probationer's rehabilitation and to insure the protection of the public. A condition is *reasonable* if it is not unnecessarily harsh or excessive in achieving these goals. Conditions that restrict a probationer's freedom must be especially fine-tuned.

*State v. Moses*, 159 Vt. 294, 298, 618 A.2d 478, 481 (1992) (quotation and alterations omitted). "While not without limitation, a trial court's discretion in this context is expansive, and will generally be upheld if the probation condition is reasonably related to the crime for which the defendant was convicted." *State v. Nelson*, 170 Vt. 125, 128, 742 A.2d 1248, 1250 (1999) (citing *State v. Whitchurch*, 155 Vt. 134, 137, 577 A.2d 690, 691-92 (1990)). Nevertheless, we have emphasized that "probation conditions should not be unduly restrictive of the probationer's liberty or autonomy." *Moses*, 159 Vt. at 297, 618 A.2d at 480 (quotation omitted). This Court will not reverse the trial court's imposition of probation conditions unless the court's "discretion has been exercised to a clearly unreasonable extent." *Id.*

## I. Condition 42

¶ 10. We first address defendant's argument that condition 42 serves no legitimate purpose related to defendant's rehabilitation or public safety. Defendant urges us to conclude that polygraph examinations serve no legitimate investigative purpose in the probation-compliance context because numerous other jurisdictions have held such examination results to be so unreliable that they are generally inadmissible in criminal trials. In support, defendant cites to our decision in *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.* where we held, in the context of use of polygraph examination results in a civil jury trial, that:

> polygraph examination results are redundant to, and an unnecessary influence on, a jury's responsibility to judge witness credibility or party liability, and that this limited, if not absence of, probative value is substantially outweighed by risks of confusion, delay, and time wasted on collateral issues related to variables in administration of the polygraph.

2012 VT 18, ¶ 24, 191 Vt. 284, 46 A.3d 891.

¶ 11. We recently addressed, in *State v. Freeman*, a special condition of probation, substantially the same as the one on appeal here, requiring the defendant to submit to polygraph examinations. 2013 VT 25, ¶ 6, 193 Vt. 454, 70 A.3d 1008. The condition in *Freeman* read: "You shall submit to, and pay for, periodic polygraph examinations at the direction of your PO or designee. These polygraph examinations will be used to determine your

compliance with supervision and treatment requirements." *Id.* On appeal the defendant argued that such a condition violated his due process rights because it required him to agree to the admission of polygraph-examination results at a future probation-revocation hearing. *Id.* ¶ 13. Reviewing for plain error, we noted that the language of the condition "indicates only that the polygraph examinations will be used as an investigative tool to determine whether defendant is remaining in compliance with other probation conditions" and that "[t]here is no explicit or implicit requirement that defendant agree to admission of polygraph results in any future revocation proceeding." *Id.* As such we did not address whether such evidence would be admissible at a future revocation proceeding. *Id.* We concluded that his plain-error argument was unavailing because nothing in the condition as imposed required the defendant to assent to the admission of the examination's result at a probation-revocation hearing. *Id.* ¶ 14.

¶ 12. As in *Freeman*, the condition imposed here expressly cabins its applicability to use as an investigative tool and does not contemplate, either implicitly or explicitly, any use in a revocation proceeding. Nevertheless, defendant argues that where concerns about reliability exist, polygraph examinations can serve no legitimate investigative function. We disagree.

¶ 13. ▮ Polygraph examinations have been recognized to have utility other than for evidentiary purposes. See, e.g., *United States v. Scheffer*, 523 U.S. 303, 312 n.8 (1998) ("Governmental use of polygraph tests, however, is primarily in the field of personnel screening, and to a lesser extent as a tool in criminal and intelligence investigations, but not as evidence at trials. . . . Such limited, out of court uses of polygraph techniques obviously differ in character from, and carry less severe consequences than, the use of polygraphs as evidence in a criminal trial."); see also 21 V.S.A. § 494b (authorizing use of polygraph examinations by certain employers for use in screening job applicants). Indeed, our Legislature has expressly statutorily authorized the imposition of a condition requiring a probationer to submit to periodic polygraph testing if, as here, the offender is on probation for a conviction for sexual assault in violation of 13 V.S.A. § 3252. 28 V.S.A. § 252(b)(16). This statutory authorization is consistent with Vermont's "systems approach" to community supervision of sex offenders:

> The Department of Corrections shall establish a comprehensive systems approach to the management of sex offenders, which employs longer and more intensive community supervision of high-risk sex offenders. To accomplish this, the Department shall employ probation officers with training in the management of sex offenders sufficient to provide intensive community supervision *and may use polygraph tests and prerelease and postincarceration treatment to promote rehabilitation.*

*Id.* § 106(a) (emphasis added). It is also in accord with defendant's probation officer's testimony at sentencing, where the officer explained that it is often difficult for a probation officer to truly know whether an offender is doing as well as he or she seems on the surface and the polygraph condition helps ensure that a defendant is in fact complying with the terms of his probation. As the probation officer further explained, while the polygraph may not provide evidentiary results such that he would bring a violation complaint on the basis of the polygraph alone, the fact of undergoing the test itself may, from time to time, prompt an offender to be more forthcoming with his or her probation officer. We note that defendant has neither challenged the applicability of § 252(b)(16) to him nor raised any concerns regarding its constitutionality. See *State v. Victoroff*, 770 P.2d 922, 923 (Or. App. 1989) (per curiam) (affirming imposition of polygraph condition where expressly authorized by statute and the "[d]efendant challenge[d] neither the constitutionality of the statute nor its application to him").

¶ 14. ■ Even accepting arguendo that a polygraph examination result would be inadmissible in a criminal proceeding due to reliability concerns, it does not follow that results of such examinations would therefore necessarily be impermissible tools for probation-compliance investigations. In a criminal proceeding in Vermont, any exclusion of a polygraph-examination result due to reliability concerns would be pursuant to the Vermont Rules of Evidence, and those rules do not apply to law-enforcement investigative techniques outside of court. V.R.E. 101 (explaining that the Vermont Rules of Evidence "govern proceedings *in the courts* of this State" (emphasis added)); see also *State v. Porter*, 698 A.2d 739, 758-59 (Conn. 1997) (concluding that where "the prejudicial impact of polygraph evidence greatly exceeds its proba-

tive value. . . . polygraph evidence should remain per se inadmissible *in all trial court proceedings in which the rules of evidence apply, and for all trial purposes*, in Connecticut courts" (emphasis added) (footnotes omitted)); *State v. Brown*, 687 P.2d 751, 775-77 (Or. 1984) (concluding that "within the context of [Oregon Rules of Evidence 401, 702, and 403], . . . the probative value of polygraph evidence is far outweighed by reasons for its exclusion" and thus "upon proper objection polygraph evidence shall not be admissible in any civil or criminal trial in [Oregon] or any other legal proceeding subject to the [Oregon Rules of Evidence]"); *In re Odell*, 672 A.2d 457, 459 (R.I. 1996) (per curiam) (recognizing inadmissibility *in evidence* of polygraph examination results under both the *Frye* and *Daubert* standards due to "the inaccuracy of the polygraph test"); cf. *Rathe Salvage*, 2012 VT 18, ¶ 24 (holding, in the civil jury trial context, that polygraph examination results are inadmissible under Vermont Rule of Evidence 403 because their limited probative value is substantially outweighed by risks of confusion, delay, and time wasted on collateral issues).

¶ 15. █ Furthermore, in a criminal/civil hybrid probation-revocation proceeding, where the Vermont Rules of Evidence do not apply, V.R.E. 1101(b)(3), even if polygraph-examination evidence were held to be inadmissible, it would not impact DOC's ability to use such techniques for other valid, nonevidentiary purposes. E.g., 28 V.S.A. § 106(a) (authorizing use of polygraph examinations for probationers to "promote rehabilitation"); see also *Scheffer*, 523 U.S. at 312 n.8 (explaining that polygraph examinations are recognized to have valid, nonevidentiary uses); *People v. Miller*, 256 Cal. Rptr. 587, 590 (Ct. App. 1989) (explaining that the rules of evidence do not prohibit law enforcement use of polygraph examinations in a probation-compliance investigation).

¶ 16. As noted above, this Court will uphold a condition of probation so long as it is reasonably related to the crime for which defendant has been convicted. Here, defendant was convicted, in part, of sexual assault. In addition to the two challenged conditions on appeal, the court also imposed various other conditions on defendant, including that he not contact or harass his victim, not consume alcohol or illegal substances, and not possess pornography. Defendant's probation officer testified that whether an offender is actually complying with the terms of his or her probation can be difficult to gauge.

¶ 17. ■ We conclude that this condition is related to the offense for which defendant was convicted. This type of nonevidentiary use of a polygraph examination will help ensure that defendant is on track with both his rehabilitation and sex offender therapy, as well as ensure public safety — all of which relate to the goals of probation and compliance investigation.[2] See, e.g., *Miller*, 256 Cal. Rptr. at 590 (holding probation condition requiring submission to polygraph examinations valid where probation officer testified at sentencing that such examinations assist in monitoring compliance and are not used for evidence of probation violation); *State v. Naone*, 990 P.2d 1171, 1182-85 (Haw. Ct. App. 1999) (holding valid a polygraph condition where sentencing court found, in part, that polygraph examinations are useful in monitoring a sex offender's compliance with the terms of his probation); *State v. Riles*, 957 P.2d 655, 663 (Wash. 1998) (recognizing that imposing "polygraph testing on sex offenders is consistent with [Washington's statutory guidelines] for therapists working with sex offenders"), *abrogated on other grounds by State v. Valencia*, 239 P.3d 1059, 1063-64 (Wash. 2010).

¶ 18. Finally, we conclude this condition is reasonable in that "it is not unnecessarily harsh or excessive in achieving these goals." *Moses*, 159 Vt. at 298, 618 A.2d at 481 (quotation omitted). Indeed, on appeal defendant does not argue to the contrary. In fact, the only negative consequence that defendant cited in his objection at sentencing was the $50 cost, which defendant's probation officer indicated would probably be covered in full by the state-subsidized insurance defendant is likely to obtain. Moreover, regardless of whether that state-subsidized insurance comes to fruition, the condition as imposed provides that failure to pay for the examinations cannot be grounds for revocation. Condition 42 is affirmed.

## II. Condition 44

¶ 19. Defendant also argues that condition 44 must be struck because it is overbroad and unduly restrictive and not reasonably related to his rehabilitation or protecting the public from the crime for which he was sentenced. Condition 44, as imposed,

---

[2] Although we hold that a probation condition requiring a probationer convicted of a sex offense to submit to periodic polygraph examinations for nonevidentiary use is permissible, we take this opportunity to emphasize what this opinion does not hold: that a probation-violation complaint may be brought on the basis of a failed polygraph examination.

authorizes defendant's probation officer to control — through a requirement that defendant obtain his probation officer's pre-approval — both where defendant resides and where he is employed. On appeal, defendant challenges condition 44 only as to the requirement that defendant seek his probation officer's approval regarding his employment, not his residence. The State contends that defendant did not preserve his objection to condition 44 and that it does not constitute plain error. We conclude that defendant properly preserved his objection to condition 44 and that it may reasonably be seen as related to defendant's rehabilitation or protecting the public, but agree with defendant that, as imposed, it is overbroad and unduly restrictive.

## A.

¶ 20. As an initial matter, we conclude that defendant preserved his objection to condition 44 and thus do not review solely for plain error as the State suggests. E.g., *Freeman*, 2013 VT 25, ¶¶ 8-12 (reviewing challenged probation conditions for plain error where defendant did not object at imposition of sentence). The State acknowledges that defense counsel initially objected to condition 44 but emphasizes the subsequent back-and-forth between the court and defense counsel when the court indicated it would modify condition 44 to contain the phrase "approval shall not be unreasonably withheld" and defense counsel responded, "Certainly, thank you." The State suggests that defense counsel's thanking of the judge "indicated [defendant's] assent to the condition."

¶ 21. ▓ As we have stressed on numerous occasions, this Court will not address issues that were not raised with specificity and clarity in the proceeding below. *State v. Rideout*, 2007 VT 59A, ¶ 19, 182 Vt. 113, 933 A.2d 706. The purpose of this limitation is so "the trial court will have an opportunity to fully develop the relevant facts and to reach considered legal conclusions." *State v. Ovitt*, 2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d 314 (mem.).

¶ 22. ▓ We conclude, and the State does not contend otherwise, that defendant's objection was stated with sufficient clarity to allow the court to rule on it. We do not agree with the State that defense counsel's gesture of courtesy in thanking the judge for considering the objection manifested assent to the condition as modified such that it constitutes withdrawal of the underlying

objection. Just prior to that particular exchange, the court had expressed a seeming exasperation at the objection, on the apparent belief that there would be no reason for defendant's probation officer to be restrictive with defendant's employment opportunities, to which counsel stated, "[w]ell, thank you, for considering it." The obvious implication was that defense counsel understood his objection had been overruled and that he was prepared to move forward with the hearing. The court's subsequent sua sponte proposal to add the language "approval shall not be unreasonably withheld," followed by defense counsel again thanking the judge, does not implicitly convey any withdrawal of the underlying objection. Indeed, defense counsel had sought to have the condition removed entirely, not modified. If anything, defense counsel's statement reflects what this Court considers to be respectful courtroom decorum in the face of an adverse decision. See, e.g., *Dudash v. Commonwealth*, No. 0655-12-1, 2012 WL 6571278, at *2 (Va. Ct. App. Dec. 18, 2012) ("[I]f the Commonwealth is suggesting that civility constitutes a waiver of prior objections, we strongly disagree."); *People v. Smith*, No. 286701, 2009 WL 3837414, at *3 (Mich. Ct. App. Nov. 17, 2009) ("[W]e decline to find that ['Thank you, Judge'] is an endorsement or agreement with the instruction as it is commonplace for counsel to say 'thank you' after a trial court has announced a ruling, regardless of whether counsel agrees with the ruling.").

¶ 23. Further, the State's selective and limited reading of the transcript does not fairly reflect the full extent of the back-and-forth between defense counsel and the court regarding defendant's objections as a whole to the special sex offender conditions of probation at issue. Indeed, from the very inception of the sentencing hearing defense counsel was concerned about preserving his objections going forward given that defendant was entering into a plea agreement, going as far as to clarify his understanding with the court before proceeding: "[S]o then my understanding is, although we've reached a plea agreement and we're waiving appeals as to most of what's, you know, in the plea agreement, we're reserving our right to appeal these sex offender conditions." The judge indicated he felt this was an allowable procedure, and the State did not dispute that conclusion. We note that this exchange occurred early on during the sentencing hearing and defense counsel's explicit reference to "these sex offender conditions." Thus, we do not read this statement as specific to condition

42, the condition that had been discussed immediately prior to this back-and-forth. Rather, a fair understanding is that defense counsel and the court were acknowledging that defendant was continuing to object to the imposition of *all* the challenged conditions notwithstanding the fact that the court had yet to address every objection.

B.

¶ 24. [9] As laid out above, the portion of condition 44 challenged in this appeal requires defendant to receive his probation officer's approval prior to obtaining or changing employment. Although this condition is not specifically enumerated in 28 V.S.A. § 252(b) as is condition 42, we agree with the State and the sentencing court that, in the context of this case — an alcohol-fueled physical and sexual assault on the streets of downtown Burlington of a young man previously unknown to defendant — a condition restricting where defendant may work can be seen as reasonably related to defendant's rehabilitation and public safety. The problem with condition 44 as imposed, however, is that it gives defendant's probation officer complete control to decide where defendant may work for reasons that may be unrelated to his rehabilitation or public safety. Rather than imposing a specific condition in this regard, the court simply turned over to defendant's probation officer the authority to control defendant's place of employment without any guiding standards, subject only to the qualification that the probation officer's approval "shall not be unreasonably withheld," and without any findings of fact explaining why such a broad delegation of implementation authority is necessary in this case.

¶ 25. ▮ Recently, in *Freeman*, we addressed a probation condition substantially the same as condition 44 — "Def. shall reside/work where PO or designee approves. Def. shall not change residence/employment without prior permission of PO or designee" — and concluded it was "plainly overbroad and unduly restrictive given the lack of findings tying the broad condition to the offenses for which defendant was convicted." 2013 VT 25, ¶¶ 6, 15. We explained that "[w]ithout any findings indicating the necessity of such a broad condition in this particular case, [the challenged condition] essentially allows the probation officer to dictate where defendant will live and work." *Id.* ¶ 17. Given our

admonition that "where fundamental rights are involved, special care should be used to avoid overbroad or vague restrictions," *id.* (quotation and alteration omitted), and our previous rejection of a "near-identical probation condition in *Moses*," we concluded it was plain error for the sentencing court to impose such a broad condition "without any findings explaining its necessity," remanding for the trial court to justify the condition, make it more specific, or strike it, *id.*

¶ 26. [11] Our holding in *Freeman* relied in part on our previous decision in *Moses*, a case involving kidnapping, elder abuse, and assault, where we addressed challenges to five special conditions of probation. Relevant to our discussion here, we upheld a condition broadly restricting the defendant's freedom of association — "You shall not associate with any person prohibited by your probation officer" — but reversed a condition broadly authorizing the defendant's probation officer to control where the defendant resided — "You shall reside where your Probation Officer directs." *Moses*, 159 Vt. at 296, 618 A.2d at 479-80. We explained that while "[i]t is improper for the court to delegate the power to *impose* probation conditions to a probation officer," delegation of the power to *implement* probation conditions can be proper where, at sentencing, the court "cannot anticipate the relevant issues and construct a proper condition." *Id.* at 300-01, 618 A.2d at 481-82 (emphases added). Thus, as to the association restriction, we explained that "[w]here the potential class of victims is broad — and individual associations are not always foreseeable or easily subject to prior approval — the condition necessarily must retain a degree of flexibility to facilitate its proper implementation." *Id.* at 298, 618 A.2d at 480. In contrast, we concluded that the restriction on residence went "beyond implementation" and that it essentially gave "open-ended authority to the probation officer to create any location-of-residence probation condition the officer deems appropriate." *Id.* at 300, 618 A.2d at 482. We explained that the court was capable of giving more precise standards to guide the defendant's probation officer in imposing residence restrictions and noted that, in contrast to the condition restricting association, "the changing of one's residence is not an incident of daily life" and "there is no reason why the court cannot anticipate the relevant issues and construct a proper condition." *Id.* at 301, 618 A.2d at 482. Thus, we concluded that the restriction on residence was not one where "the court must

authorize a probation officer to use substantial discretionary power to implement the probation condition." *Id.*

¶ 27. *Freeman* expressly held what *Moses* only implied: a probation condition, such as the one in this case that authorizes a probation officer to control a probationer's place of employment without any guiding standards contained within the condition itself, may be acceptable where the sentencing court makes sufficient findings of fact justifying use of a probation officer's substantial discretionary power to implement the condition. To be sure, the inclusion of more precise standards within a condition itself, providing implementation guidance to a probation officer as discussed in *Moses*, must be included in any situation where the court can anticipate the relevant issues. As with the change of residence condition at issue in *Moses*, we conclude that the changing of one's employment "is not an incident of daily life," and we can discern no reason why the sentencing court "cannot anticipate the relevant issues and construct a proper condition." Indeed, if the concern is specific as to alcohol, as the sentencing court alluded to in its comment, we can discern no reason why the court would be incapable of crafting a condition that creates more specific guidelines for defendant's probation officer in imposing restrictions on where defendant may work. Absent findings of fact justifying the condition as imposed, it cannot stand.[3]

¶ 28. The State contends that the condition at issue in this case is distinguishable from *Freeman* in that the court here amended the condition to contain the phrase "approval shall not be unreasonably withheld" and therefore it does not grant defendant's probation officer unfettered discretion to dictate where defendant may work. We disagree.

¶ 29. While the language the court appended to the proposed condition 44 facially limits defendant's probation officer's authority to only reasonable restrictions, that standard, such as it is, does nothing to appropriately guide defendant's probation officer's decision-making process as it relates to defendant's

---

[3] We recognize that condition 44 contains two provisions, one related to work and one related to residence. The provision as to residence was not challenged — presumably because the court inserted language preapproving defendant's residence with his mother — and was therefore not briefed or argued. Because condition 44 is one condition, however, on remand the validity of the entire condition must be considered in light of this opinion.

proposed locations of employment. It is certainly not sufficiently "fine-tuned to the specific rehabilitative and preventative goals" in this case. Additionally, as we stated in *Moses*, "we are disinclined to uphold an overbroad delegation to the probation officer simply because defendant can seek court intervention if [he] finds the officer's requirements oppressive." *Id.* at 301, 618 A.2d at 482.

*Defendant's sentence is affirmed in all respects except that the work/employment provisions of condition 44 are stricken and the matter is remanded to the criminal division of the superior court for an opportunity to justify, revise, or remove those provisions of condition 44 consistent with this opinion, and to make any findings the criminal division deems necessary.*

¶ 30. **Dooley, J.,** concurring. I concur in the opinion for the Court but write separately to state explicitly what is implied in that opinion. The conditions before us have become two of a package of standard conditions that are part of a template generated by the computer program used for probation sentences or included in the Department of Corrections recommendations in the presentence investigation. In many cases, trial judges have accepted standard conditions, often by checking boxes on the computer-generated form, without specific findings or modifications as necessary to tailor each condition to the circumstances of the individual case. It is necessarily the holding of *State v. Freeman*, 2013 VT 25, 193 Vt. 454, 70 A.3d 1008, that routine acceptance of "standard" conditions without consideration of their applicability to the circumstances before the court is inadequate, particularly where, as here, specific conditions are challenged. See *id.* ¶ 17. The routine inclusion of conditions in a computer program or a presentence investigation is not based on a determination that these conditions are preapproved for every case or for every case in which the defendant has been convicted of a particular crime. Instead, they are a tool to put before the sentencing judge a range of potential conditions for consideration if justified by the circumstances of the case.