2015 VT 50










State v. Campbell (2014-026)

 

2015 VT 50

 

[Filed 27-Mar-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 50
 
 


 


 
 
 No. 2014-026
 
 


 


 
 
 State of Vermont
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 Gordon Campbell
 
 
 December Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Michael
 S. Kupersmith, J.
 
 
 
 
  
 
 


Thomas J. Donovan, Jr., Chittenden County State’s Attorney,
and Pamela Hall Johnson, 

  Deputy State’s Attorney, Burlington, for
Plaintiff-Appellee.

 

Allison N. Fulcher of Martin &
Associates, Barre, for Defendant-Appellant.

 

 

PRESENT:   Reiber, C.J.,
Dooley, Skoglund, Robinson and Eaton, JJ.

 

 

¶ 1.            
EATON, J.   Defendant Gordon Campbell appeals two
special sex-offender conditions of probation imposed upon him following being
sentenced on a plea agreement for one count of aggravated assault and one count
of sexual assault.  We affirm one of the conditions but remand the other
for the superior court, criminal division to either strike or revise the
condition in accordance with this opinion.

¶ 2.            
In March 2006, defendant was charged in a three-count information with
sexual assault, 13 V.S.A. § 3252(a)(1)(A),[1] aggravated assault, id.
§ 1024(a)(1), and violation of conditions of
release, id. § 7559(e).  The three charges stemmed from an
incident occurring earlier that March during which defendant, after drinking
several pitchers of beer at several bars in downtown Burlington, was approached
on the street by a young man looking for directions to a local house and for
some cocaine.  During the encounter, defendant
offered the young man money in exchange for oral sex.  The young man
declined and began to walk away, but defendant followed him, repeatedly asking
for oral sex and offering to pay.  After the young man told defendant that
he was not a “faggot,” defendant physically and sexually assaulted the young
man behind a restaurant.

¶ 3.            
In March 2007, pursuant to a plea agreement with the State, defendant
pled guilty to all three counts and was sentenced that August. 
Subsequently, defendant filed a post-conviction relief petition in the civil
division and moved for summary judgment.  The civil division granted
defendant’s motion for summary judgment, vacated defendant’s sentence, and remanded
to the criminal division with leave for defendant to withdraw his plea. 
Thereafter, defendant and the State negotiated a new plea agreement where
defendant agreed to plead guilty to the two assault charges and the State
agreed it would dismiss the violation-of-conditions charge.  A
pre-sentence investigation (PSI) and psycho-sexual evaluation were ordered to
accompany the new plea agreement, and the court delayed accepting the agreement
until it had a chance to review the PSI.  Defendant, upon receipt of the
PSI and prior to the sentencing hearing, filed various written objections to
the PSI with the court, including objections to the two special sex-offender
conditions of probation, in the language originally proposed by DOC in the
PSI.  Specifically, defendant challenged condition 42, requiring, in
essence, that defendant submit to and pay for polygraph examinations; and
condition 44, requiring, in essence, that defendant reside and work only where
approved by his probation officer.

¶ 4.            
At the sentencing hearing, the court addressed each of defendant’s
objections prior to entering sentence and imposing conditions of
probation.  As to defendant’s objection to condition 42, the polygraph
condition, defense counsel argued that the condition should be stricken because
defendant could not afford to pay for the examinations and, because such
examinations are inadmissible in court, the examinations would be of no use to
defendant’s probation officer.  Upon the court’s inquiry into cost, defendant’s
probation officer indicated that such examinations generally cost a probationer
$50, with the State paying any additional costs, and that defendant would most
likely qualify for state-subsidized insurance, which would likely cover the $50
charge itself.  The court expressed its confidence in condition 42 “as
long as it’s understood that the inability to comply with these conditions is
not a violation if Defendant is unable to afford the cost.”  Defense
counsel agreed to the modification, but continued to object “just as a general
principle,” arguing that defendant’s probation officer might use a
polygraph-examination result to allege a violation of probation but then would
have nothing to support the charge in court.  Upon inquiry from the court
as to this objection, Defendant’s probation officer responded as follows:

  Your honor, I find that sometimes
I have an offender that’s doing well and has been doing well for a period of
time, and, you know, at face value he’s doing well.  I’ll put him on the
polygraph examination and confirm my belief that they’re doing well.

  Sometimes, things come up in the
polygraph that, you know, we’ll sit down and have a conversation with an
offender after the polygraph’s been done, maybe a week later.  And then
that offender is all of a sudden admitting to some of this behavior.

  I’m certainly not going to bring a
violation that says I polygraphed [defendant] on such and such a date, and
these are the results, and I’m violating these conditions.

On that explanation, the court
imposed the condition over defense counsel’s continued objection.

¶ 5.            
At this point in the sentencing hearing, defense counsel paused to
address the ability to appeal imposition of the objected-to special sex
offender conditions notwithstanding the fact that defendant and the State were
entering into a plea agreement, inquiring:

  If the Court’s inclined to impose
[condition 42], then—

  . . . .

  without
further objection, you know, we’re in this hybrid format though, in terms of we
have a plea agreement but we’re apparently contesting the sexual offender
conditions that are being imposed.  So, I don’t know, does that allow us
room to appeal these?

The court responded that “I
think—I think you probably can,” to which defense counsel stated: “[S]o then my
understanding is, although we’ve reached a plea agreement and we’re waiving
appeals as to most of what’s, you know, in the plea agreement, we’re reserving
our right to appeal these sex offender conditions.”  The court responded
“[f]ine,” and the State was silent on this
understanding.

¶ 6.            
As to condition 44, the condition restricting where defendant may live
and work, after verifying with the court that the plea agreement pre-approved
defendant residing with his mother, defense counsel objected as follows: “And
in terms of why the PO would be restricting where he could work or have the
authority to approve it, we’d object to that.”  Thereafter, the court and
counsel had the following exchange:

  The Court: Well, I don’t expect
this to be unnecessarily restrictive.  I mean, if we’re talking about a
bar, for example, that might not be a great place for [defendant] to work.

  . . . .

  Again, I don’t expect that to be
overly restrictive.  And there’s no reason for a probation officer to make
this restrictive.  I mean, part of the idea in most probation cases is to
have people gainfully employed.

  [Defense Counsel]: Indeed.

  The Court: So, if it’s anything within reason will be—it would be approved I
would think, good grief.  But something, you know, that—you know, like a
bar might not be a great place for [defendant] to work—

  [Defense Counsel]: Well, thank
you, for considering it.

  The Court:—since he appears to
have a problem with alcohol.

  [Defense Counsel]: Well, seven
years dry in jail may have cured that, we’re hoping.

  The Court: Well—believe that—

  [Defense Counsel]: But your point
is well-taken, Your Honor.  And [defendant] is happy to get an assessment
and all of the treatment recommendations.

  The Court: You know, I’ll put in here “approval shall not be unreasonably
withheld.”

  [Defense Counsel]: Certainly,
thank you.

  The Court: To make that explicit.

¶ 7.            
The court sentenced defendant to seven to thirty years, all suspended
but seven years, and placed defendant on numerous standard and special sex
offender conditions of probation, including conditions that defendant not
contact or harass his victim, not consume alcohol or illegal substances, and not
possess pornography, as well as conditions 42 and 44 as follows:

  No. 42: You shall submit to and
pay for periodic polygraph examinations at the direction of your PO or designee[.]  These polygraph[] exams will be used to
determine your compliance w/ supervision and treatment requirements—It shall
not be a violation of probation if [defendant] cannot afford to pay for
polygraph exams—[defendant] must attempt to apply for insurance/programs for
which he is eligible . . . .

  No. 44: You shall reside/work where
your PO or designee approves (present residence with mother is approved). 
You shall not change your residence/employment without the prior permission of
your PO or designee-approval shall not be unreasonably withheld[.]

¶ 8.            
This appeal followed, with defendant seeking to vacate condition 42 on
the grounds that it serves no legitimate purpose related to his rehabilitation
or public safety and condition 44 on the grounds that it is overly broad and
unduly restrictive and not reasonably related to protecting the public from the
crime for which he was sentenced.  The State argues that defendant did not
preserve his objection to condition 44 and that imposing it did not constitute
plain error, and further that condition 42 is valid.

¶ 9.            
The trial court may impose conditions of probation “such as the Court in
its discretion deems reasonably necessary to ensure that the offender will lead
a law-abiding life or to assist the offender to do so.”  28 V.S.A. § 252(a).  To this end, the trial
court may impose one or more of seventeen statutorily enumerated conditions, id.
§ 252(b)(1)-(17), including requiring submission
to periodic polygraph testing for certain sex offenders, id.
§ 252(b)(16).  In addition to the enumerated
conditions, the court may also require an offender to “[s]atisfy
any . . . conditions reasonably
related to his or her rehabilitation” and may prohibit otherwise lawful conduct
if “the condition is reasonably related to the offender’s rehabilitation or
necessary to reduce risk to public safety.”  Id. § 252(b)(18).  As we have explained:

A condition is related
to the goals of probation if it is designed, in light of the crime committed,
to promote the probationer’s rehabilitation and to insure the protection of the
public.  A condition is reasonable if it is not unnecessarily harsh
or excessive in achieving these goals.  Conditions that restrict a
probationer’s freedom must be especially fine-tuned.

State v.
Moses, 159 Vt. 294, 298, 618 A.2d 478, 481 (1992) (quotation and
alterations omitted).  “While not without limitation, a trial
court’s discretion in this context is expansive, and will generally be upheld
if the probation condition is reasonably related to the crime for which the
defendant was convicted.”  State v. Nelson, 170 Vt. 125,
128, 742 A.2d 1248, 1250 (1999) (citing State v. Whitchurch, 155 Vt. 134, 137, 577 A.2d 690,
691-92 (1990)).  Nevertheless, we have emphasized that “probation
conditions should not be unduly restrictive of the probationer’s liberty or
autonomy.”  Moses, 159 Vt. at 297,
618 A.2d at 480 (quotation omitted).  This Court will not
reverse the trial court’s imposition of probation conditions unless the court’s
“discretion has been exercised to a clearly unreasonable extent.”  Id.

I. Condition 42

¶ 10.         We
first address defendant’s argument that condition 42 serves no legitimate
purpose related to defendant’s rehabilitation or public safety.  Defendant
urges us to conclude that polygraph examinations serve no legitimate
investigative purpose in the probation-compliance context because numerous
other jurisdictions have held such examination results to be so unreliable that
they are generally inadmissible in criminal trials.  In support, defendant
cites to our decision in Rathe Salvage,
Inc. v. R. Brown & Sons, Inc. where we held, in the context of use
of polygraph examination results in a civil jury trial, that:

polygraph examination results are
redundant to, and an unnecessary influence on, a jury’s responsibility to judge
witness credibility or party liability, and that this limited, if not absence
of, probative value is substantially outweighed by risks of confusion, delay, and time wasted on
collateral issues related to variables in administration of the polygraph.

2012 VT 18,
¶ 24, 191 Vt. 284, 46 A.3d 891.

¶ 11.         We
recently addressed, in State v. Freeman, a special condition of
probation, substantially the same as the one on appeal here, requiring the
defendant to submit to polygraph examinations.  2013 VT
25, ¶ 6, 193 Vt. 454, 70 A.3d 1008.  The condition
in Freeman read: “You shall submit to, and pay for, periodic polygraph
examinations at the direction of your PO or designee.  These polygraph
examinations will be used to determine your compliance with supervision and
treatment requirements.”  Id.  On appeal the defendant argued
that such a condition violated his due process rights because it required him
to agree to the admission of polygraph-examination results at a future
probation-revocation hearing.  Id. ¶ 13. 
Reviewing for plain error, we noted that the language of the condition
“indicates only that the polygraph examinations will be used as an
investigative tool to determine whether defendant is remaining in compliance
with other probation conditions” and that “[t]here is no explicit or implicit
requirement that defendant agree to admission of polygraph results in any
future revocation proceeding.”  Id.  As such we did not
address whether such evidence would be admissible at a future revocation
proceeding.  Id.  We concluded that his plain-error argument
was unavailing because nothing in the condition as imposed required the
defendant to assent to the admission of the examination’s result at a
probation-revocation hearing.  Id. ¶ 14.

¶ 12.         As in
Freeman, the condition imposed here expressly cabins its applicability
to use as an investigative tool and does not contemplate, either implicitly or
explicitly, any use in a revocation proceeding.  Nevertheless, defendant
argues that where concerns about reliability exist, polygraph examinations can
serve no legitimate investigative function.  We disagree.

¶ 13.         Polygraph
examinations have been recognized to have utility other than for evidentiary
purposes.  See, e.g., United States v. Scheffer,
523 U.S. 303, 312 n.8 (1998) (“Governmental use of polygraph tests,
however, is primarily in the field of personnel screening, and to a lesser
extent as a tool in criminal and intelligence investigations, but not as
evidence at trials.  Such limited, out of court uses of polygraph techniques
obviously differ in character from, and carry less severe consequences than,
the use of polygraphs as evidence in a criminal trial.”); see also
21 V.S.A. § 494b (authorizing use of polygraph examinations by
certain employers for use in screening job applicants).  Indeed, our
Legislature has expressly statutorily authorized the imposition of a condition
requiring a probationer to submit to periodic polygraph testing if, as here,
the offender is on probation for a conviction for sexual assault in violation
of 13 V.S.A. § 3252.  28 V.S.A. § 252(b)(16).  This statutory authorization is consistent with
Vermont’s “systems approach” to community supervision of sex offenders:

The Department of Corrections shall
establish a comprehensive systems approach to the management of sex offenders,
which employs longer and more intensive community supervision of high-risk sex
offenders.  To accomplish this, the Department shall employ probation
officers with training in the management of sex offenders sufficient to provide
intensive community supervision and may use polygraph
tests and prerelease and postincarceration treatment
to promote rehabilitation.

Id.
§ 106(a) (emphasis added).  It is also in accord with defendant’s
probation officer’s testimony at sentencing, where the officer explained that
it is often difficult for a probation officer to truly know whether an offender
is doing as well as he or she seems on the surface and the polygraph condition
helps ensure that a defendant is in fact complying with the terms of his
probation.  As the probation officer further explained, while the
polygraph may not provide evidentiary results such that he would bring a
violation complaint on the basis of the polygraph alone, the fact of undergoing
the test itself may, from time to time, prompt an offender to be more
forthcoming with his or her probation officer.  We note that defendant has
neither challenged the applicability of § 252(b)(16)
to him nor raised any concerns regarding its constitutionality.  See State v. Victoroff,
770 P.2d 922, 923 (Or. App. 1989) (per curiam)
(affirming imposition of polygraph condition where expressly authorized by
statute and the “[d]efendant challenge[d] neither the
constitutionality of the statute nor its application to him”).

¶ 14.         Even
accepting arguendo that a polygraph examination result would be inadmissible in
a criminal proceeding due to reliability concerns, it does not follow that
results of such examinations would therefore necessarily be impermissible tools
for probation-compliance investigations.  In a criminal proceeding in
Vermont, any exclusion of a polygraph-examination result due to reliability
concerns would be pursuant to the Vermont Rules of Evidence, and those Rules do
not apply to law-enforcement investigative techniques outside of court. 
V.R.E. 101 (explaining that the Vermont Rules of Evidence “govern
proceedings in the courts of this State” (emphasis added)); see also State v.
Porter, 698 A.2d 739, 758-59 (Conn. 1997) (concluding that where “the
prejudicial impact of polygraph evidence greatly exceeds its probative
value. . . .  polygraph evidence
should remain per se inadmissible in all trial court proceedings in which
the rules of evidence apply, and
for all trial purposes, in
Connecticut courts” (emphasis added) (footnotes omitted)); State v.
Brown, 687 P.2d 751, 776-77 (Or. 1984) (concluding that “within the
context of [Oregon Rules of Evidence 401, 702, and
403], . . . the probative value of polygraph evidence is
far outweighed by reasons for its exclusion” and thus “upon proper objection
polygraph evidence shall not be
admissible in any civil or criminal trial in [Oregon] or any other legal proceeding subject to the
[Oregon Rules of Evidence]”); In re Odell, 672 A.2d 457, 459 (R.I.
1996) (per curiam) (recognizing inadmissibility in
evidence of polygraph examination results under both the Frye and Daubert standards due to “the inaccuracy of the
polygraph test”); cf. Rathe Salvage,
2012 VT 18, ¶ 24 (holding, in the civil jury trial context, that
polygraph examination results are inadmissible under Vermont Rule of Evidence
403 because their limited probative value is substantially outweighed by risks
of confusion, delay, and time wasted on collateral issues).

¶ 15.         Furthermore,
in a criminal/civil hybrid probation-revocation proceeding, where the Vermont
Rules of Evidence do not apply, V.R.E. 1101(b)(3), even if
polygraph-examination evidence were held to be inadmissible, it would not
impact DOC’s ability to use such techniques for other valid, non-evidentiary
purposes.  E.g., 28 V.S.A. § 106(a) (authorizing use of
polygraph examinations for probationers to “promote rehabilitation”); see also Scheffer, 523 U.S. at 312 n.8 (explaining that
polygraph examinations are recognized to have valid, non-evidentiary uses); People v.
Miller, 256 Cal. Rptr. 587, 590 (1989)
(explaining that the rules of evidence do not prohibit law enforcement use of
polygraph examinations in a probation-compliance investigation).

¶ 16.         As
noted above, this Court will uphold a condition of probation so long as it is
reasonably related to the crime for which defendant has been convicted. 
Here, defendant was convicted, in part, of sexual assault.  In addition to
the two challenged conditions on appeal, the court also
imposed various other conditions on defendant, including that he not contact or
harass his victim, not consume alcohol or illegal substances, and not
possess pornography.  Defendant’s probation officer testified that whether
an offender is actually complying with the terms of his or her probation can be
difficult to gauge.

¶ 17.         We
conclude that this condition is related to the offense for which defendant was
convicted.  This type of non-evidentiary use of a polygraph examination
will help ensure that defendant is on track with both his rehabilitation and
sex offender therapy, as well as ensure public safety—all of which relate to
the goals of probation and compliance investigation.[2]  See, e.g., Miller,
256 Cal. Rptr. at 590 (holding probation
condition requiring submission to polygraph examinations valid where probation
officer testified at sentencing that such examinations assist in monitoring
compliance and are not used for evidence of probation violation); State v.
Naone, 990 P.2d 1171, 1182-85 (Haw. Ct. App.
1999) (holding valid a polygraph condition where sentencing court found, in
part, that polygraph examinations are useful in monitoring a sex offender’s
compliance with the terms of his probation); State v. Riles,
957 P.2d 655, 663 (Wash. 1998) (recognizing that imposing “polygraph
testing on sex offenders is consistent with [Washington’s statutory guidelines]
for therapists working with sex offenders”), abrogated on other grounds by
State v. Valencia, 239 P.3d 1059, 1063-64 (Wash. 2010).

¶ 18.         Finally,
we conclude this condition is reasonable in that “it is not unnecessarily harsh
or excessive in achieving these goals.”  Moses,
159 Vt. at 298, 618 A.2d at 481 (quotation omitted). 
Indeed, on appeal defendant does not argue to the contrary.  In fact, the
only negative consequence that defendant cited in his objection at sentencing
was the $50 cost, which defendant’s probation officer indicated would probably
be covered in full by the state-subsidized insurance defendant is likely to
obtain.  Moreover, regardless of whether that state-subsidized insurance
comes to fruition, the condition as imposed provides that failure to pay for
the examinations cannot be grounds for revocation.  Condition 42 is
affirmed.

II. Condition 44

¶ 19.         Defendant
also argues that condition 44 must be struck because it is overbroad and unduly
restrictive and not reasonably related to his rehabilitation or protecting the
public from the crime for which he was sentenced.  Condition 44, as
imposed, authorizes defendant’s probation officer to control—through a
requirement that defendant obtain his probation officer’s pre-approval—both
where defendant resides and where he is employed.  On appeal, defendant
challenges condition 44 only as to the requirement that defendant seek his
probation officer’s approval regarding his employment, not his residence. 
The State contends that defendant did not preserve his objection to condition
44 and that it does not constitute plain error.  We conclude that
defendant properly preserved his objection to condition 44 and that it may
reasonably be seen as related to defendant’s rehabilitation or protecting the
public, but agree with defendant that, as imposed, it is overbroad and unduly
restrictive.

A.

¶ 20.         As an
initial matter, we conclude that defendant preserved his objection to condition
44 and thus do not review solely for plain error as the State suggests.  E.g., Freeman, 2013 VT 25, ¶¶ 8-12 (reviewing challenged
probation conditions for plain error where defendant did not object at
imposition of sentence).  The State acknowledges that defense
counsel initially objected to condition 44 but emphasizes the subsequent
back-and-forth between the court and defense counsel when the court indicated
it would modify condition 44 to contain the phrase “approval shall not be
unreasonably withheld” and defense counsel responded, “Certainly, thank
you.”  The State suggests that defense counsel’s thanking of the judge “indicated
[defendant’s] assent to the condition.”

¶ 21.         As we
have stressed on numerous occasions, this Court will not address issues that
were not raised with specificity and clarity in the proceeding below.  State v. Rideout,
2007 VT 59A, ¶ 19, 182 Vt. 113, 933 A.2d 706. 
The purpose of this limitation is so “the trial court will have an opportunity
to fully develop the relevant facts and to reach considered legal
conclusions.”  State v. Ovitt,
2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d
413.

¶ 22.         We
conclude, and the State does not contend otherwise, that defendant’s objection
was stated with sufficient clarity to allow the court to rule on it.  We
do not agree with the State that defense counsel’s gesture of courtesy in
thanking the judge for considering the objection manifested assent to the
condition as modified such that it constitutes withdrawal of the underlying
objection.  Just prior to that particular exchange, the court had
expressed a seeming exasperation at the objection, on the apparent belief that
there would be no reason for defendant’s probation officer to be restrictive
with defendant’s employment opportunities, to which counsel stated, “[w]ell,
thank you, for considering it.”  The obvious implication was that defense
counsel understood his objection had been overruled and that he was prepared to
move forward with the hearing.  The court’s subsequent sua
sponte proposal to add the language “approval shall
not be unreasonably withheld,” followed by defense counsel again thanking the
judge, does not implicitly convey any withdrawal of the underlying
objection.  Indeed, defense counsel had sought to have the condition
removed entirely, not modified.  If anything, defense counsel’s statement
reflects what this Court considers to be respectful courtroom decorum in the
face of an adverse decision.  See, e.g., Dudash v.
Commonwealth, No. 0655-12-1, 2012 WL 6571278, at *2 (Va. Ct. App.
Dec. 18, 2012) (“[I]f the Commonwealth is suggesting that civility constitutes
a waiver of prior objections, we strongly disagree.”); People v. Smith,
No. 286701, 2009 WL 3837414 at *3 (Mich. Ct. App. Nov. 17, 2009)
(“[W]e decline to find that [‘Thank you, Judge’] is an endorsement or agreement
with the instruction as it is commonplace for counsel to say ‘thank you’ after
a trial court has announced a ruling, regardless of whether counsel agrees with
the ruling.”).

¶ 23.         Further,
the State’s selective and limited reading of the transcript does not fairly
reflect the full extent of the back-and-forth between defense counsel and the
court regarding defendant’s objections as a whole to the special sex offender
conditions of probation at issue.  Indeed, from the very inception of the
sentencing hearing defense counsel was concerned about preserving his objections
going forward given that defendant was entering into a plea agreement, going as
far as to clarify his understanding with the court before proceeding: “[S]o
then my understanding is, although we’ve reached a plea agreement and we’re
waiving appeals as to most of what’s, you know, in the plea agreement, we’re
reserving our right to appeal these sex offender conditions.”  The judge
indicated he felt this was an allowable procedure and the State did not dispute
that conclusion.  We note that this exchange occurred early on during the
sentencing hearing and defense counsel’s explicit reference to “these sex
offender conditions.”  Thus, we do not read this statement as specific to
condition 42, the condition that had been discussed immediately prior to this back-and-forth.
 Rather, a fair understanding is that defense counsel and the court were
acknowledging that defendant was continuing to object to the imposition of all
the challenged conditions notwithstanding the fact that the court had yet to
address every objection.

B.

¶ 24.         As
laid out above, the portion of condition 44 challenged in this appeal requires
defendant to receive his probation officer’s approval prior to obtaining or
changing employment.  Although this condition is not specifically enumerated
in 28 V.S.A. § 252(b) as is condition 42, we agree with the State and
the sentencing court that, in the context of this case—an alcohol-fueled
physical and sexual assault on the streets of downtown Burlington of a young
man previously unknown to defendant—a condition restricting where defendant may
work can be seen as reasonably related to defendant’s rehabilitation and public
safety.  The problem with condition 44 as imposed, however, is that it
gives defendant’s probation officer complete control to decide where defendant
may work for reasons that may be unrelated to his rehabilitation or public
safety.  Rather than imposing a specific condition in this regard, the
court simply turned over to defendant’s probation officer the authority to control
defendant’s place of employment without any guiding standards, subject only to
the qualification that the probation officer’s approval “shall not be
unreasonably withheld,” and without any findings of fact explaining why such a
broad delegation of implementation authority is necessary in this case.

¶ 25.         Recently,
in Freeman, we addressed a probation condition substantially the same as
condition 44—“Def. shall reside/work where PO or designee approves.  Def.
shall not change residence/employment without prior permission of PO or
designee”—and concluded it was “plainly overbroad and unduly restrictive given
the lack of findings tying the broad condition to the offenses for which defendant
was convicted.”  2013 VT 25, ¶¶ 6, 15.
 We explained that “[w]ithout any findings indicating the necessity of such a broad condition in this
particular case, [the challenged condition] essentially allows the
probation officer to dictate where defendant will live and work.”  Id. ¶ 17.  Given our admonition that “where
fundamental rights are involved, special care should be used to avoid overbroad
or vague restrictions,” id. (quotation and alteration omitted), and our
previous rejection of a “near-identical probation condition in Moses,”
we concluded it was plain error for the sentencing court to impose such a broad
condition “without any findings explaining its necessity,” remanding for the
trial court to justify the condition, make it more specific, or strike it, id.

¶ 26.         Our
holding in Freeman relied in part on our previous decision in Moses,
a case involving kidnapping, elder abuse, and assault, where we addressed
challenges to five special conditions of probation.  Relevant to our
discussion here, we upheld a condition broadly restricting the defendant’s
freedom of association—“You shall not associate with any person prohibited by
your probation officer”—but reversed a condition broadly authorizing the
defendant’s probationer officer to control where the defendant resided—“You
shall reside where your Probation Officer directs.”  Moses,
159 Vt. 296, 618 A.2d at 479-80.  We
explained that while “[i]t is improper for the court
to delegate the power to impose probation conditions to a probation
officer,” delegation of the power to implement probation conditions can
be proper where, at sentencing, the court “cannot anticipate the relevant
issues and construct a proper condition.”  Id. at 300-01,
618 A.2d at 481-82 (emphases added).  Thus, as to the association
restriction, we explained that “[w]here the potential class of victims is
broad—and individual associations are not always foreseeable or easily subject
to prior approval—the condition necessarily must retain a degree of flexibility
to facilitate its proper implementation.”  Id. at 298, 618 A.2d at 480.  In contrast, we concluded that
the restriction on residence went “beyond implementation” and that it
essentially gave “open-ended authority to the probation officer to create any
location-of-residence probation condition the officer deems appropriate.” 
Id. at 300, 618 A.2d at 482.  We
explained that the court was capable of giving more precise standards to guide
the defendant’s probation officer in imposing residence restrictions and noted
that, in contrast to the condition restricting association, “the changing of
one’s residence is not an incident of daily life” and “there is no reason why
the court cannot anticipate the relevant issues and construct a proper
condition.”  Id. at 301, 618 A.2d at 482. 
Thus, we concluded that the restriction on residence was not one where “the
court must authorize a probation officer to use substantial discretionary power
to implement the probation condition.”  Id.

¶ 27.         Freeman
expressly held what Moses only implied: a probation condition, such as
the one in this case that authorizes a probation officer to control a
probationer’s place of employment without any guiding standards contained
within the condition itself, may be acceptable where the sentencing court makes
sufficient findings of fact justifying use of a probation officer’s substantial
discretionary power to implement the condition.  To be sure, the inclusion
of more precise standards within a condition itself, providing implementation
guidance to a probation officer as discussed in Moses, must be included
in any situation where the court can anticipate the relevant issues.  As
with the change of residence condition at issue in Moses, we conclude
that the changing of one’s employment “is not an incident of daily life,” and
we can discern no reason why the sentencing court “cannot anticipate the
relevant issues and construct a proper condition.”  Indeed, if the concern
is specific as to alcohol, as the sentencing court alluded to in its comment,
we can discern no reason why the court would be incapable of crafting a
condition that creates more specific guidelines for defendant’s probation
officer in imposing restrictions on where defendant may work.  Absent
findings of fact justifying the condition as imposed, it cannot stand.[3]

¶ 28.         The
State contends that the condition at issue in this case is distinguishable from
Freeman in that the court here amended the condition to contain the
phrase “approval shall not be unreasonably withheld” and therefore it does not
grant defendant’s probation officer unfettered discretion to dictate where
defendant may work.  We disagree.

¶ 29.         While
the language the court appended to the proposed condition 44 facially limits
defendant’s probation officer’s authority to only reasonable restrictions, that
standard, such as it is, does nothing to appropriately guide defendant’s
probation officer’s decision-making process as it relates to defendant’s
proposed locations of employment.  It is certainly not sufficiently
“fine-tuned to the specific rehabilitative and preventative goals” in this
case.  Additionally, as we stated in Moses, “we are disinclined to
uphold an overbroad delegation to the probation officer simply because
defendant can seek court intervention if [he] finds the officer’s requirements
oppressive.”  Id. at 301.

Defendant’s sentence is
affirmed in all respects except that the work / employment provisions
of condition 44 are stricken and the matter is remanded to the criminal
division of the superior court for an opportunity to justify, revise, or remove
those provisions of condition 44 consistent with this opinion, and to make any
findings the criminal division deems necessary.

 

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 

¶ 30.         DOOLEY,
J., concurring.   I concur in the
opinion for the Court but write separately to state explicitly what is implied
in that opinion.  The conditions before us have become two of a package of
standard conditions that are part of a template generated by the computer
program used for probation sentences or included in the Department of
Corrections recommendations in the pre-sentence investigation.  In many
cases, trial judges have accepted standard conditions, often by checking boxes
on the computer-generated form, without specific findings or modifications as necessary
to tailor each condition to the circumstances of the individual case.  It
is necessarily the holding of State v. Freeman, 2013 VT 25,
193 Vt. 454, 70 A.3d 1008, that routine acceptance of “standard”
conditions without consideration of their applicability to the circumstances
before the court is inadequate, particularly where, as here, specific
conditions are challenged.  See id. ¶ 17. 
The routine inclusion of conditions in a computer program or a pre-sentence
investigation is not based on a determination that these conditions are
pre-approved for every case or for every case in which the defendant has been
convicted of a particular crime.  Instead, they are a tool to put before
the sentencing judge a range of potential conditions for consideration if justified
by the circumstances of the case.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
 
 


 

 














[1]
 In 2005, the Legislature revised 13 V.S.A. § 3252, relabeling
subsection (a)(1)(A) as simply subsection
(a)(1).  See 2005, No. 192 (Adj. Sess.), § 10, (eff. May 26, 2006).





[2]
 Although we hold that a probation condition requiring a probationer
convicted of a sex offense to submit to periodic polygraph examinations for
non-evidentiary use is permissible, we take this opportunity to emphasize what
this opinion does not hold: that a probation-violation complaint may be brought
on the basis of a failed polygraph examination.





[3] 
We recognize that condition 44 contains two provisions, one related to work and
one related to residence.  The provision as to residence was not
challenged—presumably because the court inserted language pre-approving
defendant’s residence with his mother—and was therefore not briefed or
argued.  Because condition 44 is one condition, however, on remand the
validity of the entire condition must be considered in light of this opinion.